# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 14, 2019        Decided May 10, 2019

No. 18-5064

RICHARD A. FIGUEROA,
APPELLANT

v.

MICHAEL R. POMPEO, SECRETARY, U.S. DEPARTMENT OF
STATE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00649)

*Amelia Frenkel*, appointed by the Court, argued the cause as *amicus curiae* in support of Appellant. With her on the briefs was *James Rosenthal*.

*Richard A. Figueroa*, *Pro se*, filed the briefs for Appellant.

*Daniel P. Schaefer*, Assistant U.S. Attorney, argued the cause for Appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: HENDERSON and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: A worker challenging employment discrimination often must demonstrate her employer's illegal intent. That is not easy. Employers ordinarily are not so daft as to create or keep direct evidence of discriminatory purpose.

Decades ago, the Supreme Court devised a three-step process to help the employee make her case through circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Over the years, we have filled hundreds of pages in the Federal Reporter explaining the first and third prongs of the *McDonnell Douglas* framework. This case compels us to bring into focus an issue on which we rarely pause: what we require at the second step.

Until 2009, Richard Figueroa worked as a foreign service officer in the United States Department of State (Department). He presses two claims in his *pro se* lawsuit against the Secretary of State (Secretary). First, he contends that one aspect of the Department's promotion process has had a disparate impact on Hispanic and Latino candidates who applied for the position he sought. Second, he alleges that the Secretary in 2008 denied him a promotion because of his Hispanic ethnicity. After discovery, both sides filed motions for summary judgment. The District Court sided with the Secretary, and Figueroa seeks our review.

We now affirm the judgment in part because the disparate impact claim lacks merit. But as to the second claim, the District Court misapplied the second step of the *McDonnell Douglas* framework. We reverse the grant of the Secretary's

motion in part, vacate the denial of Figueroa's cross-motion in part, and remand for further proceedings.

I.

A.

Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241, 253-66 (codified as amended in 42 U.S.C. §§ 2000e to 2000e-17), reflects the American promise of equal opportunity in the workforce and shields employees from certain pernicious forms of discrimination. The statute's substantive protections "apply with equal force in both private and federal-sector cases." *Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012).

Relevant here, federal employees may invoke two theories to prove Title VII liability. First, under the disparate impact theory, employees may challenge the government's use of a "particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(k)(1)(A)(i). Second, under the disparate treatment theory, they may challenge any "personnel actions affecting employees" and involving "any discrimination based on race, color, religion, sex, or national origin." *Id.* § 2000e-16(a). Such actions include hiring, firing, and the provision of "compensation, terms, conditions, or privileges of employment." *See id.* § 2000e-2(a)(1).

Figueroa is a Hispanic male born in Puerto Rico. Under established law, Title VII covers discrimination based on Hispanic or Latino ethnicity, a distinction "as 'odious' and 'suspect' as those predicated" on race, color, and national origin. *United States v. Doe*, 903 F.2d 16, 21-22 (D.C. Cir. 1990) (footnotes omitted); *see also Burlington N. & Santa Fe*

*Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (noting that Title VII protects against "ethnic" discrimination). We interpret the three Title VII categories as working together to prevent such discrimination. Employees are free to invoke one or more of the three categories as they see relevant and analogous to their circumstances. *See, e.g.*, *Ricci v. DeStefano*, 557 U.S. 557, 562-63 (2009) (race); *Ortiz-Diaz v. U.S. Dep't of Hous. & Urban Dev. Office of Inspector Gen.*, 867 F.3d 70, 71 (D.C. Cir. 2017) (race and national origin); *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 533 (D.C. Cir. 2003) (national origin). We expect that few, if any, cases by Hispanic and Latino employees will implicate none of those prongs.

B.

Here, Figueroa reasonably invokes national-origin discrimination. (We also see no issue with the District Court's *sua sponte* invocation of race discrimination. *See Figueroa v. Tillerson*, 289 F. Supp. 3d 212, 219-20 (D.D.C. 2018).) Figueroa joined the Department's Foreign Service in 1986. The Foreign Service employs officers who "advocate American foreign policy, protect American citizens, and promote American interests throughout the world." *Shea v. Kerry*, 796 F.3d 42, 46 (D.C. Cir. 2015) (quoting *Taylor v. Rice*, 451 F.3d 898, 900 (D.C. Cir. 2006)). Figueroa started at a mid-level pay grade – FS-05 – and served in the political division of the Foreign Service, also known as the political "cone." The highest FS pay grade is FS-01, and the Secretary promoted him up the ranks to the FS-02 level in 1997.

Officers become eligible for promotion after they work a minimum number of years at their current FS pay grade. Every year, an office in the Department determines the number of promotion slots. The Secretary divvies them up between two six-member selection boards. The boards select candidates in

turn. The first board reviews all employees across a salary level – all FS-02 officers, for instance. The second board then reviews the candidates whom the Secretary did not promote from the first board's recommendations. The second board considers employees in a particular cone – all political-cone officers, as an example.

The boards employ a similar evaluative approach, with differences not relevant to this appeal. The Department instructs board members to base their decisions on the candidate files they receive. The members of a board independently will determine whether each candidate should be placed on a list of finalists. A candidate generally needs one member's recommendation to become a finalist. Once they have determined the list, the members individually review each finalist's file again, this time giving it an overall score of one to ten. The scores are totaled and help the group decide how to rank the finalists. The Secretary promotes the highest ranked according to the number of open slots afforded to the board.

The candidates who fail to become finalists are classified as low- or mid-ranked. The boards do not issue scores to those candidates. The low-ranked are deemed to have performed the worst in the applicant pool, and the ranking indicates that the candidate is deficient in some relevant skill. The rest are mid-ranked. Each year, the boards engage in a fresh look at each candidate, regardless of her ranking in prior years.

The board members evaluate the files based on substantive criteria called "core precepts." They consist of six performance areas: leadership skills, managerial skills, interpersonal skills, communication and foreign language skills, intellectual skills, and substantive knowledge.

The Department and labor union representing foreign service officers like Figueroa created an eight-page chart describing the precepts in place from 2005 to 2008. Some precepts are purely subjective. According to the chart, an evaluator assessing leadership skills must assess the officer's innovation, decisionmaking, teamwork, openness to dissent, community service, and institution building. Others appear more objective. As an example, the evaluator considering substantive knowledge will observe the officer's application of job knowledge, institutional knowledge, technical skills, professional expertise, and knowledge of foreign cultures. But the chart reveals that even the more objective precepts involve purely subjective determinations. For each precept, the chart identifies skills that evaluators expect an officer to have at certain stages in her tenure. Under substantive knowledge, the evaluator expects a senior-level officer, among other things, to create supportive work environments. In total, the evaluator looks for 89 specific skills in a junior officer, 94 in a more experienced officer, and 86 in a senior-level officer.

Figueroa first became eligible for promotion to the FS-01 pay grade in 2000, and he applied every year until his retirement in 2009. The boards classified him as low-ranked in 2000 and 2001 and as mid-ranked in 2002 and 2003. He made it to the lower end of the ranked finalist lists in 2004 and 2005, but he again was deemed mid-ranked from 2006 to 2009.

On October 20, 2008, after the 2008 promotion cycle, Figueroa sent an email to the Department's Office of Civil Rights, seeking an investigation into alleged discrimination against him because of his Hispanic ethnicity. He filed a formal complaint on November 26, 2008. After years of investigation, the Department issued a Final Agency Decision on August 15, 2013. The Department concluded that Figueroa failed to make a *prima facie* case of disparate impact. As for

disparate treatment, the Department found that he made a *prima facie* showing, but that he failed to prove that the proffered nondiscriminatory reason for his denial of promotion – application of the core precepts – was pretextual. Figueroa appealed to the Equal Employment Opportunity Commission (EEOC), which affirmed on March 1, 2016.

Within ninety days of receiving notice that the EEOC has acted on an appeal, an "aggrieved" employee "may file a civil action" in federal court. 42 U.S.C. § 2000e-16(c). On April 6, 2016, Figueroa filed his *pro se* action against the Secretary, asserting disparate impact and disparate treatment. After discovery had concluded, the parties filed motions for summary judgment as to both claims. The District Court granted the Secretary's motion in full, denied Figueroa's in full, and entered judgment on January 31, 2018.

Figueroa now seeks our review. On September 11, 2018, we denied the Secretary's motion for summary affirmance and appointed James Rosenthal as *amicus curiae* supporting Figueroa. Amelia Frenkel, who appeared as Rosenthal's co-counsel, presented Figueroa's case at oral argument. We thank Rosenthal and Frenkel for ably discharging their duties.

II.

We review summary judgment decisions *de novo*, considering the record evidence as a whole. *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016); *Hairston v. Vance-Cooks*, 773 F.3d 266, 271 (D.C. Cir. 2014). The District Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists 'if the evidence, viewed in a light most favorable to the nonmoving

party, could support a reasonable jury's verdict for the non-moving party.'" *Hairston*, 773 F.3d at 271 (quoting *Hampton v. Vilsack*, 685 F.3d 1096, 1099 (D.C. Cir. 2012)).

III.

We first dispatch with the disparate impact claim. Under the theory, an employee attacks "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). She need not demonstrate "illicit motive." *Segar v. Smith*, 738 F.2d 1249, 1266 (D.C. Cir. 1984). Generally, the employee's initial burden is to identify the specific employment practice allegedly causing a disparate effect, *see* 42 U.S.C. § 2000e-2(k)(B)(i), and to make "a threshold showing of" a "significant statistical disparity" caused by that practice, *Ricci*, 557 U.S. at 587 (citation omitted). Once she has made the showing, the defendant must prove "the business necessity of the practice" or face liability under Title VII. *Segar*, 738 F.2d at 1267.

Figueroa challenges the fresh annual review given by the selection boards, which ignore the candidate's rankings in prior years. The District Court rejected the claim by making two alternative findings: (1) his evidence did not indicate a substantial enough disparity between Hispanic and Latino officers and others in the pool, and (2) the evidence does not establish causation. We need not decide the propriety of the first holding because we agree with the second.

Figueroa provides several pieces of evidence to bolster his disparate impact claim. Among them are statistics from 2006 to 2008 showing that no Hispanic or Latino candidate was promoted to the FS-01 pay grade, even though, during those

years, Hispanic and Latino candidates made up 4.0% to 5.8% of the applicant pool and the overall promotion rate was 14.1% to 17.6%. "[S]mall numbers are not per se useless," and the "'inexorable zero' can raise an inference of discrimination even if the subgroup analyzed is relatively small." *See Valentino v. U.S. Postal Serv.*, 674 F.2d 56, 72-73 (D.C. Cir. 1982) (quoting *Teamsters*, 431 U.S. at 342 n.23) (disparate treatment case). Furthermore, statistics from even one year may support a *prima facie* case. *See Ricci*, 557 U.S. at 586-87; *see also Nash v. Consol. City of Jacksonville*, 905 F.2d 355, 358 (11th Cir. 1990).

Still, even if the record evidence indicates a substantial disparity, the evidence does not demonstrate how the annual refresh, as opposed to other aspects of the promotion process, leads to the disparity. To make a *prima facie* case, the plaintiff must produce sufficient evidence "demonstrating a causal connection" between the policy and the disparate impact. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Proj., Inc.*, 135 S. Ct. 2507, 2523 (2015); *accord* 42 U.S.C. § 2000e-2(k)(1)(A)(i).

Here, Figueroa and *amici* do not make any persuasive argument with respect to causation. Both point to non-statistical evidence, but none of the cited materials even refers to – let alone establishes a connection with – the challenged refresh policy. Because no genuine issue of material fact exists and Figueroa fails to establish causation as a matter of law, the Secretary is entitled to summary judgment on the disparate impact claim.

IV.

We now turn to the disparate treatment claim. Under the theory, a worker "seeks to prove that an employer intentionally

'treats some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Segar*, 738 F.2d at 1265 (quoting *Teamsters*, 431 U.S. at 335 n.15). "Proof of illicit motive is essential," and the employee "at all times" has the burden of proving "that the defendant intentionally discriminated against" her. *Id.* at 1265, 1267 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Employees often use the three-step *McDonnell Douglas* method of proof when they have only circumstantial evidence of improper intent. *Wheeler*, 812 F.3d at 1113; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (noting that the framework allows employees to have their "day in court despite the unavailability of direct evidence" (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979))). The framework is "designed 'progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.'" *Segar*, 738 F.2d at 1297 (Edwards, J., concurring) (quoting *Burdine*, 450 U.S. at 255 n.8). At the first stage, the employee must establish a *prima facie* case. *Wheeler*, 812 F.3d at 1113-14. If she does, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Id.* at 1114. If the employer meets its burden of production, the "burden then shifts back" to the employee, who must prove that, despite the proffered reason, she has been the victim of intentional discrimination. *Id.*

We have criticized the *McDonnell Douglas* framework as creating "largely unnecessary sideshow[s]" about what constitutes a *prima facie* case, providing little practical benefit to parties in the ordinary case, and failing to simplify judicial proceedings. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). We intimated our general expectation that, at the summary judgment stage, the District

11

Court will focus on the third prong: whether the employer intentionally discriminated. *Id.* We noted that, if the employer clearly presents a nondiscriminatory reason, the District Court's analysis of the *prima facie* factors at summary judgment becomes gratuitous, even confusing. *Id.* We further observed that employers ordinarily attempt to satisfy the second prong, and that they often succeed. *See id.* at 493; *cf.* 1 BARBARA T. LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW ch. 2.II.B (C. Geoffrey Weirich ed., 5th ed. 2012) ("The plaintiff's prima facie case rarely stands unrebutted.").

Given the doctrine's flexibility, we offered a shortcut for the District Court to tackle the "critical question of discrimination." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). When the employer properly presents a legitimate, nondiscriminatory reason, the District Court "need not – *and should not* – decide whether the plaintiff actually made out a prima facie case" because it better spends its limited resources on assessing the third prong. *Brady*, 520 F.3d at 494.

But the *Brady* shortcut applies only if the parties properly move past the second step. *See id.* at 494 n.2. *Brady*'s suggested preference for merits resolution on the third prong is just that – a suggestion, which the District Court should follow only when feasible. *Brady* does not pretermit serious deliberation at the second prong. Nor does it imply that the District Court may relieve the employer of its burden, at the second prong, "to articulate a legitimate, nondiscriminatory reason for its action." *Wheeler*, 812 F.3d at 1114. Failing to articulate such a reason properly "is the legal equivalent of . . . having produced no reason at all." *Patrick v. Ridge*, 394 F.3d 311, 320 (5th Cir. 2004). A rush to the third prong may

deprive the employee of *McDonnell Douglas*'s unrebutted presumption of discrimination created by the *prima facie* case. *See, e.g.*, *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 524 (7th Cir. 1994); *Hill v. Seaboard Coast Line R.R. Co.*, 767 F.2d 771, 774-75 (11th Cir. 1985).

Attempting to abide by *Brady*, the District Court labored over the second-prong analysis but ultimately determined that prior precedent required it to accept the Secretary's proffered reason: that the candidates who were promoted were better qualified than Figueroa. *See Figueroa*, 289 F. Supp. 3d at 221-24. The District Court then concluded that he failed to raise a genuine issue of material fact as to pretext. *See id.* at 224-28.

We find that the District Court's conclusion at the second prong was mistaken. An employer cannot satisfy its burden of production with insufficiently substantiated assertions. We now clarify the requirements for an "adequate" evidentiary proffer by the employer, *see Shea*, 796 F.3d at 60, and explain why the Secretary's was flawed.

Numerous factors may come into play at the second prong. We list four here, expecting them to be paramount in the analysis for most cases. First, the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding). *See Segar*, 738 F.2d at 1268 (noting that evidence must be "admissible"). Second, the factfinder, if it "believed" the evidence, must reasonably be able to find that "the employer's action was motivated by" a nondiscriminatory reason. *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1151 (D.C. Cir. 2004); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (noting that the District Court may not engage in "credibility assessment" of witnesses who present evidence (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993))). That is, the employer must "raise

a genuine issue of fact as to whether the employer intentionally discriminated against the" employee. 1 MERRICK T. ROSSEIN, EMPLOYMENT DISCRIMINATION LAW AND LITIGATION § 2:8 (2018); *accord Reeves*, 530 U.S. at 142; *St. Mary's Honor Ctr.*, 509 U.S. 502, 509 (1993); *Burdine*, 450 U.S. at 254. Third, the nondiscriminatory explanation must be legitimate. In other words, the reason must be facially "credible" in light of the proffered evidence. *Bishopp v. District of Columbia*, 788 F.2d 781, 788-89 (D.C. Cir. 1986).

A central purpose of the second prong is to "focus the issues" and provide the worker "with 'a full and fair opportunity' to attack the" explanation as pretextual. *Lanphear v. Prokop*, 703 F.2d 1311, 1316 (D.C. Cir. 1983) (quoting *Burdine*, 450 U.S. at 256). Thus, as the fourth factor, the evidence must present a "clear and reasonably specific explanation." *Segar*, 738 F.2d at 1269 n.13; *accord Burdine*, 450 U.S. at 258; *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008). A "plaintiff cannot be expected to disprove a defendant's reasons unless they have been articulated with some specificity." *Loeb*, 600 F.2d at 1011 n.5, *cited in Burdine*, 450 U.S. at 258.

Here, we think that the Secretary fails to meet the fourth factor (and therefore his burden of production) because his articulation of a purported legitimate, nondiscriminatory reason "conceal[s] the target" at which Figueroa must aim pretext arguments. *Lanphear*, 703 F.2d at 1316. The Secretary has produced an eight-page chart outlining the Department's core precepts, and Figueroa does not dispute its admissibility. The Secretary also has provided declarations from board members stating that they followed the precepts in considering Figueroa's file. The Secretary also proffers Figueroa's ultimate evaluation in 2008: mid-ranked. The Secretary contends that the evidence suffices to raise a triable issue of

fact regarding intentional discrimination. We disagree as a matter of law.

We acknowledge that the precepts are facially nondiscriminatory, and that applying such precepts – no matter how subjective the criteria – may constitute a legitimate reason for non-promotion. *See, e.g.*, *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir. 2006) ("[E]mployers may use matrices that reward applicants who meet subjective criteria."). Indeed, many evaluations require an intuitive, often idiosyncratic balancing of interests, and we do not second-guess legitimate business judgments. *See* 45C AM. JUR. 2D *Job Discrimination* § 2450 (2018) (deeming legitimate the promotion of "someone better qualified").

Still, with subjective standards, we also perceive an intolerable risk that a nefarious employer will use them as cover for discrimination. *See Lanphear*, 703 F.2d at 1316. *McDonnell Douglas* allows for employees to pierce the opacity and for factfinders to distinguish between good and bad actors. In our view, we frustrate the Supreme Court's design if we allow employers to satisfy their burden of production without a "clear and reasonably specific" explanation as to how the employers applied their standards to the employee's particular circumstances. *Segar*, 738 F.2d at 1269 n.13. Plaintiffs lack the resources (and the clairvoyance) to guess at how their respective decisionmakers interpreted the criteria and to explain away each standard at trial. We also expect that no reasonable jury would accept a vague and slippery explanation.

Homing in on the dangers of imprecise, subjective reasoning, the Eleventh Circuit has articulated a set of legal principles that we adopt today. The employer "may not merely state that the employment decision was based on the hiring of the 'best qualified' applicant." *Steger v. Gen. Elec. Co.*, 318

F.3d 1066, 1076 (11th Cir. 2003); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc) ("[I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because 'I did not like his appearance' with no further explanation."). As the Eleventh Circuit persuasively argues, such a vague statement "leaves no opportunity for the employee to rebut the given reason as a pretext." *Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990). Instead, the employer must "articulate specific reasons for that applicant's qualifications such as 'seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination' of such criteria." *Steger*, 318 F.3d at 1076 (quoting *IMPACT*, 893 F.2d at 1194); *see also Alexander v. Fulton Cty.*, 207 F.3d 1303, 1342-43 (11th Cir. 2000) (finding that an employer failed to provide a sufficient reason for promoting two candidates because the evidence "failed to identify *any* specific qualifications of [the other candidates'] that explained his appointment"), *overruled in part on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (en banc).

Every sister circuit confronting the issue has agreed with the Eleventh Circuit. The Fifth, Sixth, and Seventh Circuits now demand proffers of evidence reasonably revealing how the employer applied subjective standards to the worker's circumstances. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 616-18 (5th Cir. 2007) (noting that a "subjective reason for not selecting a candidate" will satisfy the second prong "only if the employer articulates a clear and reasonably specific basis for [the] subjective assessment," and finding insufficient the employee's lower interview scores because the employer provided no "explanation" or "evidence" for why other candidates were evaluated more favorably or of their "relative

qualifications"); *EEOC v. Target Corp.*, 460 F.3d 946, 957 (7th Cir. 2006) (rejecting the mere assertion that the employee "did not meet the requirements" because the employer failed to "give a clear statement as to which requirements [he] lacked"); *Patrick*, 394 F.3d at 317 (holding that the employer must articulate a relatively "specific" reason "in some detail," and finding insufficient the employer's proffered reason because it was "bald and amorphous"); *Tye v. Bd. of Educ. of Polaris Joint Vocational Sch. Dist.*, 811 F.2d 315, 319 (6th Cir. 1987) ("[The decisionmaker]'s statement that he did what he thought was best for [the employer] is a subjective reason which is legally insufficient to rebut [the employee]'s *prima facie* case."), *abrogated in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 96-97 & n.17 (6th Cir. 1982) (rejecting reason that the decisionmakers "did not want" the worker after completing a "subjective evaluation procedure," and finding that neither "reference" to the employee's "occasional admonishments" in the past nor a "passing reference . . . to some deficiency in the [employee]'s job rating" suffices (quoting *Loeb*, 600 F.2d at 1011 n.5)).

*Lyons v. England*, 307 F.3d 1092 (9th Cir. 2002), is not to the contrary. The Ninth Circuit turned to the third *McDonnell Douglas* step even though the employer asserted as its reason, "[w]ithout indicating specific weaknesses," that the employees at issue were "not the best qualified." *Id.* at 1117. A review of the briefing in *Lyons* shows that the employees failed to challenge the reason's sufficiency at the second prong. *See* Appellants' Reply Brief at 7-8, *Lyons v. England*, No. 00-55343 (9th Cir. filed Aug. 17, 2000), 2000 WL 33989712; Brief for Appellee Honorable Richard Danzig, Secretary of the Navy at 36-38, *Lyons v. England*, No. 00-55343 (9th Cir. filed Aug. 10, 2000), 2000 WL 33981184. Later cases in the Ninth

Circuit have clarified that the articulated reason must be reasonably specific to the particular worker. *See Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1211 (9th Cir. 2008) (finding insufficient an employer's explanation that the employee "was discharged as part of a general reduction in force" because such a general statement "does not explain why [the particular employee] was chosen to be part of" the discharged group); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008) (rejecting "economic reasons" because it did not explain why the employee "in particular was laid off").

We also do not interpret the Eighth Circuit's holdings to conflict with the majority view. The Eighth Circuit in *Hilde v. City of Eveleth*, 777 F.3d 998 (8th Cir. 2015), and *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc), proceeded to the third prong while appearing to accept rather vague statements by the employer. *See Hilde*, 777 F.3d at 1007 ("[The selected candidate] was simply 'the most qualified candidate for the position.'"); *Torgerson*, 643 F.3d at 1047 ("'[B]oth scored significantly lower than other candidates. . . . [B]oth . . . were lacking in qualifications as compared to the higher ranking candidates.'"). But the employees in both cases failed to raise any argument with respect to the second prong. *See* Appellant's Reply Brief at 8-15, *Hilde v. City of Eveleth*, No. 14-1016 (8th Cir. filed Apr. 29, 2014), 2014 WL 1879017; Plaintiffs-Appellants Brief at 35, *Torgerson v. City of Rochester*, No. 09-1131 (8th Cir. filed Mar. 10, 2009) (en banc), ECF No. 3525991.

In *Nelson v. USAble Mutual Insurance Co.*, 918 F.3d 990 (8th Cir. 2019), the Eighth Circuit held that a black employee's lower score on an interview was a legitimate, nondiscriminatory reason for her employer's decision to promote a white applicant instead of her, *see id.* at 993. Although the Eighth Circuit makes no reference to the case law

established in the Eleventh Circuit, the evidence the employer proffered would satisfy the standards we articulate today.

The employer implemented a specific scoring and assessment system for its interviews, "ask[ing] each applicant the same questions and scor[ing] their responses 1-5 in eleven separate categories." *Id.* at 992. The employer provided not only evidence of the white applicant's record but also the employer's completed scoresheets to the Eighth Circuit and the plaintiff. The eleven criteria were clearly delineated and based on the applicant's skills, knowledge, education, and experience. *See* Reply Brief of Appellant Corrie Nelson at 16, *Nelson v. USAble Mut. Ins. Co.*, No. 18-1439 (8th Cir. filed June 13, 2018), 2018 WL 3089602. The scoresheets notified the plaintiff that, although she had better scores in multitasking than the white applicant, she had worse ones in five other categories: oversight skills for daily operations, ability to work independently, leadership skills, sales skills, and knowledge of the customer-service process. *Id.* The pair were also deemed evenly matched on the other five criteria: initiative, products knowledge, highest degree and related experience, supervisory experience, and system experience. *Id.*

With the scoresheets and precise breakdown between the two candidates, the plaintiff easily could determine which factors she should challenge at the third prong of the *McDonnell Douglas* framework. In her case, the plaintiff attempted to show pretext by pointing out, among other things, that she had a master's degree while the white applicant had only a high school diploma, and that there was no evidence in the record that the white applicant had any management experience. *See id.* at 18-19. Even though the Eighth Circuit ultimately rejected her arguments, *see Nelson*, 918 F.3d at 993-94, we cannot say the employer's proffered evidence

19

"conceal[ed] the target" for those pretext challenges, *see Lanphear*, 703 F.2d at 1316.

Moreover, the Eleventh Circuit's rules are consistent with what employers have done in various cases before us. In *Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006), not only did the employer point to specific evaluation criteria and assert that it had promoted the most qualified candidate for a supervisor position related to Equal Employment Opportunity (EEO) complaints, but also it provided significant evidence bolstering the claim. The decisionmaker explained in an affidavit that she thought the promoted candidate was more qualified because the former's "background as a paralegal and EEO counselor gave her a broader understanding of the administrative EEO complaint and district court process as well as more [relevant] hands-on experience than" the plaintiff, and because the plaintiff listed no "work experience" related to the listed criteria. *Id.* at 896. Such evidence reasonably indicated to the employee that her work experience was the issue.

In *Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003), the plaintiff was passed over for a director position, and the government said its nondiscriminatory reason was that the other candidate was more qualified. The government provided evidence that the plaintiff "rarely" attended management meetings, received complaints about not being involved in management, and provided as his application a photocopy of someone else's memorandum describing the plaintiff's managerial skills. *Id.* at 428-29. Meanwhile, the other candidate prepared a twenty-one-page application detailing his managerial vision. *Id.* at 429. The government's evidence fairly put the plaintiff on notice of what reasoning he must challenge: the other candidate's "more keen interest in management." *Id.* at 428.

In *Paquin v. Federal National Mortgage Association*, 119 F.3d 23 (D.C. Cir. 1997), the employer produced three years of annual evaluations, in which the fired plaintiff received notice of "substandard performance" in three areas: the existence of "'repeated or blatant errors' in . . . work," the need for "increased creativity," and the need for "greater insight into investor preferences and valuation processes," *id.* at 27. By articulating those specific grounds, the employer gave the plaintiff targets at which to aim.

Furthermore, our understanding of the second prong does not conflict with the holdings in *Adeyemi v. District of Columbia*, 525 F.3d 1222 (D.C. Cir. 2008); *Carter v. George Washington University*, 387 F.3d 872 (D.C. Cir. 2004); *Fischbach v. District of Columbia Department of Corrections*, 86 F.3d 1180 (D.C. Cir. 1996); or *Milton v. Weinberger*, 696 F.2d 94 (D.C. Cir. 1982).

In *Adeyemi*, we stated that the employer "has asserted a legitimate, non-discriminatory reason for not hiring [the plaintiff] – namely, that it hired [two other applicants] because they were better qualified." 525 F.3d at 1227. And in *Fischbach*, we said: "The Department says that it chose between [the two candidates] based solely upon their answers during the interview, as reflected in the score that the interview panel assigned to each applicant." 86 F.3d at 1182. We accepted the reasons and proceeded to the third prong of the *McDonnell Douglas* framework. But in both cases, the plaintiffs conceded that the government had a nondiscriminatory reason. *See* Final Brief of the District of Columbia at 15, *Adeyemi v. District of Columbia*, No. 07-7077 (D.C. Cir. filed Feb. 26, 2008), 2008 WL 544496; Brief of Appellee at 16, *Fischbach v. D.C. Dep't of Corr.*, Nos. 95-7154, 95-7167 (D.C. Cir. filed Jan. 30, 1996), 1996 WL 33662349.

In *Milton*, we rejected a pre-*Burdine* Circuit precedent placing an unduly stringent burden on the employer at the second prong, and we said we had "little difficulty affirming the District Court's finding that [the employer] satisfactorily articulated" the reason for not hiring one of the plaintiffs. 696 F.2d at 99. In our view, "[t]he record seem[ed] clear" that the plaintiff would not have scored highly enough on the employer's evaluation to be selected for a position. *Id.* Although we omitted discussion on whether the employer reasonably explained why her marks were lower than others, the briefing in the case failed to present such an argument. *See* Brief for Appellants at 9-12, *Milton v. Weinberger*, No. 81-2200 (D.C. Cir. filed Feb. 18, 1982) (on file with the Circuit Library of the United States Court of Appeals, District of Columbia Circuit).

In *Carter*, we dealt with nondiscriminatory reasons for two adverse actions. One of the actions was thoroughly explained. The employer preferred one candidate over the plaintiff for a fundraising director position. The proffered evidence showed that the decisionmaker thought the plaintiff was worse because she "had no pertinent experience working with potential major donors" and "had never directed a fund-raising campaign of any size." *Carter*, 387 F.3d at 881.

The other action was not. Without further comment, we accepted the employer's reason that the plaintiff "interviewed poorly" before the recommending committee. *Id.* at 879. In a cursory statement in the middle of a paragraph, the plaintiff in her briefing submitted that the employer failed to explain its reason. Appellant's Corrected Brief at 19 ("[T]he . . . affidavit does not specify . . . what interviewing skills she . . . lacked."), *Carter v. George Wash. Univ.*, No. 01-7203 (D.C. Cir. filed Feb. 24, 2004), 2004 WL 5844233. But a fair reading of the

brief shows that the plaintiff was directing her arguments toward the third *McDonnell Douglas* prong. Moreover, the District Court explained below that the plaintiff in fact conceded that she interviewed poorly. *See Carter v. George Wash. Univ.*, 180 F. Supp. 2d 97, 106 (D.D.C. 2001), *aff'd*, 387 F.3d 872 (D.C. Cir. 2004). Thus, she failed fairly to present the argument Figueroa persuasively articulates today. We would have asked for more had she raised the issue. *See Target*, 460 F.3d at 957 ("[I]f the employer rejected an applicant because he gave a 'poor interview,' the employer must explain what specific characteristics it perceived as 'poor,' such as the applicant's interview responses were unclear and off point.").

Accordingly, we hold that an employer at the second prong must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions. The evidence must suffice to raise a triable issue of fact as to intentional discrimination and to provide the employee with a full and fair opportunity for rebuttal. When the reason involves subjective criteria, the evidence must provide fair notice as to how the employer applied the standards to the employee's own circumstances. Failing to provide such detail – that is, offering a vague reason – is the equivalent of offering no reason at all.

V.

Reviewing *de novo* the legal analysis of the second prong, s*ee Pullman-Standard v. Swint*, 456 U.S. 273, 287 & n.17 (1982), we find that the District Court erred in accepting the Department's vague reason. None of the presented evidence sheds light on how the selection boards applied the core precepts to Figueroa's case. All we know is that the board determined Figueroa to be mid-ranked – which at most says he

was not deficient in any relevant skill. But that fact does not explain why the boards deemed him less qualified than the highest-ranked candidates.

We see a close analogy between this case and a context familiar to us and employment discrimination lawyers: grading in a law school exam. The grading criteria are clear and unsurprising: writing style, quality of the case citations, and sophistication of the legal and factual analysis. But an eager law student who receives a B under the rubric needs more to understand, and perhaps challenge, her grade. Law students ordinarily are evaluated on a curve. The professor may believe a B student to be proficient, even excellent, on all three fronts yet, for some reason, not to be among the top of the pack. Perhaps the reason is benign; the curve was just too tight. But perhaps the professor had indigestion while reading her exam answers. The student is left only to speculate on whether her subjectively determined grade was reasonable or unfair. Unless provided with additional information (such as a model answer) that shows what differentiates her from the best, the student is unable to understand her professor's reasoning and muster a persuasive case for raising her mark.

Likewise here, unless the Secretary provides Figueroa with some evidence explaining how Figueroa compared to the top-ranked finalists, Figueroa is deprived of a full and fair opportunity to make his case. The problem is worse for Figueroa than for the law student in our analogy, because he must address dozens of criteria.

The Secretary also proffered declarations made by seven of the twelve board members during the EEOC proceedings. Figueroa does not challenge their admissibility. Four stated that they considered the core precepts. But none of the declarants explained what differentiated the best candidates

from the rest, nor did they recall anything about why Figueroa's application was middling under the criteria. Figueroa, unlike the plaintiff in *Nelson*, has largely no idea how he did relative to the promoted applicants. Lacking sufficient details, the declarations fail to provide a clear and reasonably specific explanation under *McDonnell Douglas*.

And it is of no moment that Figueroa had access to records in the candidate file reviewed by the selection boards. "The introduction of 'personnel records which *may* have indicated that the employer based its decisions on one or more of the possible valid grounds' will not suffice to meet the" employer's burden of production, *Steger*, 318 F.3d at 1076 (quoting *IMPACT*, 893 F.2d at 1194), because the evidence encourages the employee and factfinder to guess at reasons – which muddles, not sharpens, the issues and thus contravenes the purpose of the *McDonnell Douglas* framework, *see IMPACT*, 893 F.2d at 1194. If the records had mentioned a clear deficiency, then it would have been easy for the Secretary to invoke the fault as a nondiscriminatory reason. *See Paquin*, 119 F.3d at 27. But the records here do not, and the Department still must show how the board members in fact evaluated Figueroa's file.

The Secretary contends that requiring additional evidence imposes a "significant burden" on large employers like the Department, which must review hundreds of candidates. Appellee's Br. 29. Although the District Court agreed, *see Figueroa*, 289 F. Supp. 3d at 224 n.3, we are not persuaded for three reasons.

First, the individuals assigned by the Department to evaluate candidates for promotion must make judgments about the relative talents of large numbers of employees. The evaluators essentially are grading candidates on absolute terms

and against one another along a curve, and they therefore should be able to explain why one candidate's grade is lower than others. Just as a law professor can give a student a model answer and an annotated exam to differentiate the student's exam from the best, so too can the Secretary's graders explain to Figueroa how he fared against the highest-rated candidates. After all, *McDonnell Douglas* focuses on what constitutes fair notice to the employee and a "full and fair opportunity" to make her case. *Lanphear*, 703 F.2d at 1316 (quoting *Burdine*, 450 U.S. at 256). Because the Secretary has elected to run a highly individualized evaluation system, the employee and the factfinder justifiably expect a somewhat particularized explanation.

Second, the burden of production under *McDonnell Douglas* does not depend on the employer's size. *See Target*, 460 F.3d 949-50, 957-58 (finding inadequate explanation of retailer running 1,100 stores). Third, we expect that large employers will finds ways to manage. For instance, the Department in 2016 implemented a policy retaining the evaluation notes of board members for one year.

As his final argument, the Secretary flags that Figueroa "had a full and fair opportunity to seek discovery" and yet failed to avail himself of it. Appellee's Br. 33. After attempting to seek the written notes of members (which, according to the Secretary, had been destroyed pursuant to the Department's policy for selection board notes), Figueroa neither performed any depositions of the decisionmakers nor sought other "information or documents relating to the" qualifications of promoted candidates. *Id.* at 34. We acknowledge that Figueroa's *pro se* discovery strategy is less than ideal. Even so, we find the Secretary's point unpersuasive. Discovery blunders may prevent a plaintiff from succeeding at the first or third prong. But we see little

connection between the second step and discovery. The prong demands nothing of the employee, and the employer will always have the relevant records in its possession. Moreover, even if an employee executes the perfect discovery strategy, a vague and slippery explanation may still confuse the issues and prevent the employee from presenting a clean case at trial. *See EEOC v. Flasher Co.*, 986 F.2d 1312, 1318 (10th Cir. 1992) (noting that when employers fail to give a proper explanation "at the outset," litigations become "needlessly confused and delayed"). The rules we articulate today help to prevent such mischief.

## VI.

Because the Secretary has failed to meet his burden of production under the *McDonnell Douglas* framework, we revive the disparate treatment claim. The Secretary's summary judgment arguments below all relied on a successful showing of a legitimate, nondiscriminatory reason. Indeed, the government conceded the *prima facie* case for the purpose of the motion. *See* Defendant's Reply in Support of Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment at 19 n.3, *Figueroa v. Pompeo*, No. 1:16-cv-649 (CRC) (D.D.C. filed May 25, 2017), ECF No. 20. The Secretary having failed to meet his burden, the District Court was required to deny the motion as to the disparate treatment claim.

Accordingly, we reverse the judgment in part. We express no opinion as to whether the District Court correctly analyzed Figueroa's claim at the third prong. We do not decide, among other issues, whether the District Court properly weighed an EEO report proffered as evidence supporting not only the Secretary's *post hoc* rationalization of the non-promotion but

also his spoliation of material records. To defeat the disparate treatment claim, the Secretary must wait until trial.

But the District Court may not proceed immediately to *voir dire*, because it must revisit Figueroa's summary judgment cross-motion. Under the *McDonnell Douglas* framework, an employee who proves her *prima facie* case is entitled to a presumption that the employer discriminatorily mistreated her. The presumption dissipates only if the employer meets its burden of production. Here, the District Court did not determine whether Figueroa made a *prima facie* case.

Consequently, we vacate in part the District Court's denial of Figueroa's cross-motion, and we remand for further proceedings. The District Court should decide the merits of the *prima facie* case in the first instance, considering the arguments in Figueroa's cross-motion and assessing the evidence in the light most favorable to the Secretary. Although the government failed to contest the first prong below, the "burden is always on [Figueroa] to demonstrate why summary judgment is warranted," and the District Court "must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring)).

If every reasonable juror would find that the *prima facie* case "*is* supported" by the summary judgment record, then the District Court "*must* find the existence of the presumed fact of unlawful discrimination and *must*, therefore," issue summary judgment in Figueroa's favor. *St. Mary's Honor Ctr.*, 509 U.S. at 510 n.3; *accord O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). But if the District Court finds a genuine issue of material fact with respect to the *prima facie*

case, then the case may proceed to trial, where the Secretary would not be estopped from producing evidence of a legitimate, nondiscriminatory, clear, and reasonably specific explanation.

\* \* \*

In sum, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

*So ordered.*