# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 22-7036**

**September Term, 2022**

FILED ON: JUNE 20, 2023

KENNETH DICKERSON,
> APPELLANT

v.

DISTRICT OF COLUMBIA,
> APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02213)

---

Before: WILKINS, RAO, and PAN, *Circuit Judges*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and the briefs and arguments of the parties. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** that the order of the district court, entered on March 3, 2022, is **AFFIRMED**.

\* \* \*

Dr. Kenneth Dickerson is an African-American educator who was employed at Wilson Senior High School ("Wilson") in the District of Columbia from 1996 to 2008, most recently as an assistant principal. In 2007, Wilson underwent restructuring for failing to meet educational standards set by the No Child Left Behind Act (the "Act"). As the Act permitted, then-D.C. Public Schools Chancellor Michelle Rhee decided to replace Wilson's entire leadership team, including Dr. Dickerson. He filed this lawsuit against the District of Columbia under 42 U.S.C. §§ 1981 and 1983 for intentionally discriminating against him based on his race. He alleged that the District's explanation for his non-reappointment was pretextual and asserts that racial animus motivated that decision. The district court found insufficient evidence to support his claim, and granted the District's motion for summary judgment. We affirm.

At all times relevant to this case, District of Columbia schools were subject to the No Child Left Behind Act. *See* Pub. L. No. 107-110, 115 Stat. 1425 (2002), *repealed by* Every Student Succeeds Act, Pub. L. No. 114-95, 129 Stat. 1802 (2015). The Act required schools to make "adequate yearly progress" toward meeting proficiency goals. 20 U.S.C. § 6311(b)(2)(B), (G), (I) (2006). If a school failed to make adequate yearly progress for five consecutive years, it entered "restructuring," which included mandatory implementation of at least one "alternative governance" action in a manner "consistent with [s]tate law." *Id*. § 6316(b)(8)(B). One of the Act's "alternative governance" options allowed the District to "[r]eplac[e] all or most of the school staff (which may include the principal) who are relevant to the failure to make adequate yearly progress." *Id.* § 6316(b)(8)(B)(ii).

Wilson did not make adequate yearly progress for five years and entered restructuring during the 2007–08 school year. At the end of that school year, Chancellor Rhee elected to replace the school's entire leadership team — including the principal and all of the assistant principals — based on her conclusion that the school's leaders were "staff . . . relevant to the failure to make adequate yearly progress." *See* Powe Decl. ¶¶ 11–12; 20 U.S.C. § 6316(b)(8)(B)(ii) (2006). As a result, none of the members of Wilson's leadership team, including Dr. Dickerson, received an offer for reappointment. Even aside from the restructuring required by the Act, Chancellor Rhee had discretion to decide whether to reappoint principals and assistant principals, all of whom worked without tenure on a year-to-year basis. *See* D.C. Mun. Regs. subtit. 5-e, § 520.1–.2 (2008); *see also* Pl.'s Statement of Facts ¶¶ 2–3.

Chancellor Rhee's decision to replace Wilson's leadership team was consistent with the recommendations of a Local School Restructuring Team ("LSRT") composed of Wilson parents and staff, which provided her with feedback about how Wilson should be restructured. Among other reforms, the LSRT recommended "[b]ring[ing] in a permanent principal with a background of strong educational leadership" and engaging in "partial reconstitution of the Wilson staff/function," specifically including assistant principals. LSRT Mem. 1. The LSRT emphasized that "[t]he identification of new leadership [was] the foundation of [the] restructuring effort" and that reconstitution would "allow the new principal to establish a new leadership team for the school that will . . . build the grade-level teamwork that will be essential between each assistant principal and counselor." *Id.*

The District hired Peter Cahall as Wilson's new principal. It also hired four new assistant principals for the 2008–09 school year. Two of the new assistant principals were African-American. One, Mary Beth Waits, was a white woman. Principal Cahall specifically requested that the District hire Ms. Waits. In an email to Chancellor Rhee, he wrote: "You told me to tell you what I need and I need to have Mary Beth on my team." J.A. 552. Cahall further noted that Ms. Waits had an advanced degree, "is a master scheduler," and previously "worked to get a school out of restructuring." *Id.* at 551–52.

On June 30, 2009, Dr. Dickerson and other former school officials who were not reappointed pursuant to school restructurings under the Act filed the instant lawsuit in D.C. Superior Court. The District removed the case to the U.S. District Court for the District of

Columbia. The plaintiffs alleged, among other claims, that the District unlawfully discriminated against them by not reappointing them, thus violating 42 U.S.C. § 1981 and various other state and federal laws. In a thorough opinion, the district court evaluated and dismissed all but the § 1981 claims. *See Dickerson v. District of Columbia*, 70 F. Supp. 3d 311 (D.D.C. 2014) (*Dickerson I*). Years later, only Dr. Dickerson remained in the lawsuit; all the other plaintiffs had voluntarily dismissed their claims or had their cases dismissed for lack of prosecution. On March 13, 2018, Dr. Dickerson filed a Fourth Amended Complaint, alleging that the District violated 42 U.S.C. §§ 1981 and 1983 by not reappointing him because of his race. *See* Fourth Am. Compl. ¶¶ 29–40. The district court denied the District's motion to dismiss this Complaint, so the parties proceeded to discovery. *See Dickerson v. District of Columbia*, 315 F. Supp. 3d 446 (D.D.C. 2018) (*Dickerson II*).

After discovery concluded, the District successfully moved for summary judgment. *See Dickerson v. District of Columbia*, No. 1:09-cv-2213 (PLF), 2022 WL 656172 (D.D.C. Mar. 3, 2022) (*Dickerson III*). Applying the *McDonnell Douglas* framework, the district court concluded that the District's restructuring of Wilson constituted a legitimate, nondiscriminatory reason for Dr. Dickerson's non-reappointment, and that Dr. Dickerson's allegations of pretext were unsupported by the record, incorrect as a matter of law, or immaterial to the discrimination claims. *Id.* at *9–12.

We review a district court's grant of summary judgment *de novo*, analyzing the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in his favor. *See Morris v. McCarthy*, 825 F.3d 658, 667 (D.C. Cir. 2016). Summary judgment is appropriate "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(a). Because Dr. Dickerson brought a § 1981 claim for disparate treatment, he must point to evidence that the District intentionally discriminated against him on the basis of race. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 & n.1 (D.C. Cir. 2013) (per curiam).

When an employer offers a legitimate, nondiscriminatory reason for an allegedly discriminatory employment action, "the district court need not — and should not — decide whether the plaintiff actually made out a prima facie case" of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis omitted); *see also Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (explaining that *McDonnell Douglas* applies to § 1981 claims). Instead, the district court "better spends its limited resources on assessing the third prong," *i.e.*, whether the employer's asserted reason was a pretext for discrimination. *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019). This allows the district court to "resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race . . . ?" *Brady*, 520 F.3d at 494.

Here, the District provided a legitimate, nondiscriminatory reason for not reappointing Dr. Dickerson as an assistant principal: the "categori[c]al decision to non-reappoint the *entire*

3

leadership team at Wilson High School, in [an] effort to comply with federal requirements for restructuring a school that was failing to educate its students." Def.'s Mem. Supp. Summ. J. 11 (emphasis in original). Dr. Dickerson did not challenge the legitimacy of the District's proffered nondiscriminatory reason in the district court, so he may not do so on appeal. *See Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1039 (D.C. Cir. 2003) (declining to address the merits of a claim "raised for the first time on appeal"). In his opposition to the District's motion for summary judgment, Dr. Dickerson noted that the District "assert[ed] that it has a legitimate business reason for its decision," and he therefore "proceed[ed] directly to *McDonnell Douglas*['s] third step" regarding pretext. Pl.'s Opp'n to Summ. J. 15–16; *see Dickerson III*, 2022 WL 656172, at *10 (noting that plaintiff "[did] not dispute that a restructuring can constitute a legitimate, nondiscriminatory reason for an employee's non-reappointment"). We thus decline to review Dr. Dickerson's new argument that the District "did not articulate a legitimate, nondiscriminatory reason for not reappointing [him]." Appellant Br. 19–20, 31–35; *see also Liff v. Off. of Inspector Gen.*, 881 F.3d 912, 919 (D.C. Cir. 2018) ("A federal appellate court does not consider an issue not passed upon below" absent "exceptional cases or particular circumstances." (cleaned up)).

Dr. Dickerson makes three arguments to support his claim that the restructuring was a pretext for discrimination. We find each of his arguments unpersuasive.

First, Dr. Dickerson contends that the District presented contradictory evidence about the restructuring decision. In his telling, the LSRT's recommendation did not mention him by name nor explicitly urge the District to replace the entire leadership team at Wilson. *See* Appellant Br. 9–10, 28–31. Thus, he contends, the District falsely represented that it relied on the LSRT's memorandum when it decided not to reappoint him. A plaintiff can show pretext if an "employer is making up or lying about the underlying facts that formed the predicate for the employment decision." *Brady*, 520 F.3d at 495. But here, the evidence does not support Dr. Dickerson's assertion that his non-reappointment had nothing to do with the LSRT's work. The LSRT recommended a "partial reconstitution of the Wilson staff/function, specifically to include . . . [a]ssistant [p]rincipals." LSRT Mem. 1. By adopting the suggested approach, "the new principal [could] establish a new leadership team for the school that [would] . . . build the grade-level teamwork that will be essential between each assistant principal and counselor." *Id.* The District's corporate representative testified that Chancellor Rhee understood this recommendation to mean "remov[ing] the leadership team as a whole." Powe Dep. 25:5–7, 26:7–8; *see also* Powe Decl. ¶ 11. The uncontradicted evidence thus supports the District's claim that Chancellor Rhee relied on the LSRT's recommendation when she chose to replace Wilson's leadership team. The absence of any specific recommendation in the LSRT regarding Dr. Dickerson does not support an inference that the District did not actually rely on the LSRT or that Dr. Dickerson's non-reappointment was motivated by racial animus.

Second, Dr. Dickerson claims that the District failed to consider his individual qualifications, performance evaluations, or role in Wilson's underperformance, which shows that the District had an ulterior motive when replacing him. *See* Appellant Br. 36, 38–40; Reply Br. 16–17. But individual consideration of Dr. Dickerson's qualifications was not necessary when the Chancellor elected to replace the entire leadership team at Wilson due to the school's substandard

performance. *See, e.g.*, Powe Dep. 26:8; LSRT Mem. 1; Restructuring Plan 14. Indeed, while the record clearly shows that Dr. Dickerson received multiple positive evaluations and was repeatedly reappointed to serve as Wilson's assistant principal, the decision to replace him was ultimately within the Chancellor's discretion under the Act, which permitted the District to replace school officials "who are relevant to the failure to make adequate yearly progress." 20 U.S.C. § 6316(b)(8)(B)(ii) (2006). And Dr. Dickerson points to nothing in the record suggesting that his non-reappointment "was based on selection criteria other than his involvement . . . in Wilson's persistent underperformance and placement in restructuring." *Dickerson III*, 2022 WL 656172, at *10 n.6.

Nor, contrary to Dr. Dickerson's claims, did the District violate municipal regulations and the Act by failing to consider his individual qualifications. Dr. Dickerson notes that the Act's "alternative governance" options must be accomplished in a manner "consistent with [s]tate law." 20 U.S.C. § 6316(b)(8)(B) (2006). He cites D.C. municipal regulations that require the District to "fill vacancies with the best qualified candidates available" and prohibit adverse action "for grounds that . . . [are] arbitrary or capricious." D.C. Mun. Regs. subtit. 5-E, §§ 1110.1, 1401.1–.2 (2008). According to Dr. Dickerson, those regulations required the District to consider his individual qualifications before replacing him. *See* Appellant Br. 23–24. But Dr. Dickerson relies on the wrong municipal regulations. To be sure, assistant-principal positions must be "*filled* on the basis of qualifications and aptness for the particular position." D.C. Mun. Regs. subtit. 5-E, § 515.3 (2008) (emphasis added). But a different set of regulations governs *reappointment*. Under the relevant provisions, "[r]etention and reappointment [are] at the discretion of the [Chancellor]." *Id.* § 520.2; *see also id.* § 1400.2(a) (providing that "[t]he termination of a temporary appointment upon the expiration of the stated term of appointment" is not subject to § 1401.1's prohibition on "arbitrary or capricious" adverse actions). As Dr. Dickerson conceded, "Chancellor Rhee had authority to reappoint or to not reappoint [p]rincipals and [assistant principals] at the end of their term." Pl.'s Statement of Facts ¶ 3; *see also* D.C. Mun. Regs. subtit. 5-E, § 520.2 (2008). Thus, Dr. Dickerson failed to establish that the District violated any municipal regulation when it opted not to reappoint him as an assistant principal.[1]

Third, Dr. Dickerson theorizes that he was replaced by Mary Beth Waits, a white woman, whom he claims the District preselected for his job. *See* Appellant Br. 43–44. An employer's "better treatment of similarly situated employees outside the plaintiff's protected group" can permit an inference of pretext. *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016) (cleaned up). And an employer's decision to preselect a candidate "is undeniably relevant to the question of discriminatory intent." *Krodel v. Young*, 748 F.2d 701, 709 (D.C. Cir. 1984). No evidence, however, supports Dr. Dickerson's assertion that the District decided to replace him with Ms. Waits. The District hired four assistant principals for the 2008–09 school

---

[1] To the extent that Dr. Dickerson brings a freestanding claim under the No Child Left Behind Act, his argument fails because the Act does not confer a private right of action. *Horne v. Flores*, 557 U.S. 433, 456 n.6 (2009). To the extent that Dr. Dickerson alleges violations of municipal regulations, we further note that the district court considered — and rejected — similar claims nearly a decade ago. *Dickerson I*, 70 F. Supp. 3d at 321–23.

year, including Ms. Waits. *See* Powe Decl. ¶ 14. Two of those hires were African-American. *Id.* Because Dr. Dickerson produced no evidence that Ms. Waits — rather than one of the two African-American assistant principals — replaced him, we are unable to infer racial animus from the mere fact that he was one of four assistant principals who were not reappointed. *Cf. Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005) ("[A] replacement within the same protected class cuts strongly against any inference of discrimination.").

Moreover, it is difficult to discern whether Dr. Dickerson and Ms. Waits were "similarly situated" because the record lacks evidence about her qualifications. Although it was Dr. Dickerson's burden to provide evidence that Ms. Waits was an appropriate comparator, *see Wheeler*, 812 F.3d at 1115–16, nothing in the record suggests that the two had "nearly identical" employment situations in "all . . . relevant aspects," *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (cleaned up). In his deposition, Dr. Dickerson made clear that he did not "know her qualifications" for the assistant-principal position. *See* Dickerson Dep. 139:14–140:21. Indeed, what little the record does reveal about Ms. Waits suggests that in at least two crucial respects, she was not similarly situated to Dr. Dickerson. First, she was not an administrator at Wilson during the five years preceding restructuring. *See Dickerson III*, 2022 WL 656172, at *11. And second, unlike Dr. Dickerson, she had previously "worked to get a school out of restructuring." *See* J.A. 551–52. Thus, Dr. Dickerson failed to muster sufficient evidence of pretext based on his asserted replacement by a similarly situated white woman.

The evidence on the summary-judgment record does not create a genuine issue of material fact as to whether the District's decision not to reappoint Dr. Dickerson was motivated by racial animus. We therefore affirm the district court's order granting summary judgment to the District.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

FOR THE COURT:
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk