# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 10, 2018       Decided July 30, 2019

No. 17-5113

ELISA R. CRUZ,
APPELLANT

v.

KEVIN K. MCALEENAN, ACTING SECRETARY OF THE U.S.
DEPARTMENT OF HOMELAND SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00039)

*Tamara L. Miller* argued the cause and filed the briefs for appellant.

*Joshua L. Rogers*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GRIFFITH and WILKINS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: Elisa Cruz alleges that the Department of Homeland Security (DHS) engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII). DHS filed a motion for summary judgment, which the District Court granted over Cruz's objection and request to take discovery. Cruz appeals the District Court's order granting summary judgment to DHS and denying Cruz's motion to stay proceedings to allow for discovery under Federal Rule of Civil Procedure 56(d). For the reasons set forth below, we reverse the order in large part and remand for further proceedings.

**I.**

Because we are reviewing the District Court's grant of summary judgment, we take the following facts from the evidence and read them in the light most favorable to Cruz, the non-moving party, drawing all reasonable inferences in her favor. *See, e.g.*, *Ortiz-Diaz v. Dep't of Hous. & Urban Dev., Office of Inspector Gen.*, 867 F.3d 70, 72 (D.C. Cir. 2017).

Cruz, an African-American female of Hispanic national origin, was employed from 2007 to 2012 within DHS as the Chief Information Security Officer (CISO) at the Federal Emergency Management Agency's (FEMA) Office of the Chief Information Officer (OCIO). The head of OCIO and Cruz's second-level supervisor was Jeanne Etzel, a white woman. The Deputy Chief Information Officer for Administration and Cruz's direct supervisor was Maria Roat, also a white woman.

In early January 2012, Don Buskard, one of Cruz's colleagues and a white man, sent Etzel an email reporting that Cruz had behaved inappropriately during three meetings. Etzel forwarded the email to Roat and asked her to investigate

Buskard's allegations. Roat enlisted Human Resources to discuss the allegation and "requested assistance in determining if a reassignment would be warranted." J.A. 216. Reassignment would serve the purpose of limiting Cruz's supervisory duties without changing her salary grade. Human Resource Specialist Kirsten Gunsolus advised Roat on how to proceed. In an email to Roat dated January 4, 2012, Gunsolus wrote:

> [G]iven the fact that there are conduct issues regarding Ms. Cruz, I would suggest that I conduct a fact finding session and gather all the documentation surrounding her conduct issues during the past year that you have gathered, and then I would make a recommendation for the reassignment to you from the [Labor and Employee Relations] office. That way, if Ms. Cruz decides to pursue any legal avenues, you'd have that documentation and recommendation as backup for the reassignment.

J.A. 104.

Over the next few weeks, Gunsolus began a "limited administrative inquiry" into allegations of Cruz's workplace conduct. J.A. 216. In addition to interviewing several of Cruz's colleagues, Gunsolus reviewed emails from Cruz to various people, meeting notes, and the report of a previous investigation concerning Cruz. Gunsolus's report notes that "none of [Cruz's] employees, except one that [did not] have much interaction with her" wanted to participate in the investigation. J.A. 217. Additionally, Gunsolus did not meet with or interview Cruz in preparing her informal report.

On January 26, 2012, Gunsolus completed her investigation. Gunsolus concluded that "there is general

consensus among the peers and employees that work with Ms. Cruz that she is often abrasive, rude, yells, and is condescending . . . ." J.A. 218. Gunsolus corroborated Buskard's allegations that Cruz had behaved unprofessionally at recent meetings; she would "'take over' the meeting in a negative way" and not follow the meeting agenda. J.A. 217. During one meeting conducted via conference call, Cruz did not announce "several of her subordinates" who were with her in her office, "nor did any of them speak up at any time during the meeting." *Id.* Indeed, Gunsolus found that the general feeling among her peers was that Cruz's employees were too afraid to speak up in her presence. Gunsolus ultimately determined that Roat's request to reassign Cruz to another position with fewer supervisory responsibilities was reasonable. Moreover, Gunsolus approved of Roat sending Cruz a written warning that would serve to "put her on notice that she needs to improve her conduct in her interactions with people." J.A. 218.

On March 14, 2012, Cruz received a written warning from Roat. The warning explained that one of Cruz's colleagues had reported her for inappropriate conduct at meetings and that there had been an informal inquiry into these allegations. Cruz was notified that she was to be detailed for ninety days from FEMA OCIO to a position with DHS Headquarters OCIO. In response to the written warning and reassignment, Cruz sought counseling from FEMA's Equal Employment Opportunity (EEO) office. In a March 29, 2012 email, Roat disseminated a new OCIO organizational chart showing Cruz as Deputy CISO, rather than CISO, her previous title. This reassignment, which did not affect her paygrade, became effective on April 8, 2012.

On June 6, 2012, Cruz filed a formal complaint with FEMA, alleging that she had been subject to discrimination based on her race, color, national origin, and sex. One week

later, on June 13, 2012, Roat asked DHS to extend Cruz's detail for four to six weeks so that the person taking over her former position could be onboarded before she returned.  On June 20, 2012, Cruz's detail to DHS Headquarters was extended.

On October 1, 2012, Roat informed Cruz that, upon returning from her detail, she would be placed in a new position rather than assuming her already reassigned role of FEMA Deputy CISO.  She was to become the Chief of the Resource Management Branch within the OCIO.  Cruz objected to the reassignment because she did not feel qualified to perform the necessary duties.  However, in or around December 2012, FEMA's Human Resources office conducted an inquiry and determined that Cruz was sufficiently qualified for the new role.  Based on the June 2012 extension of her detail and October 2012 second reassignment, on February 6, 2013, Cruz amended her administrative complaint to include allegations of retaliation. Over two years later, on September 25, 2015, an administrative law judge for the Equal Employment Opportunity Commission (EEOC) issued a decision in favor of FEMA.  On October 14, 2015, EEOC issued its final order, which concluded that no discrimination or retaliation had occurred.

On January 8, 2016, Cruz filed her federal complaint against the Secretary of DHS, bringing claims of unlawful discrimination and retaliation under Title VII.  On April 28, 2016, DHS answered and then moved for summary judgment three weeks later.  Cruz opposed the motion in substance and argued that it was premature given the lack of discovery.  Her counsel also submitted an affidavit under Rule 56(d) to support her argument.  On March 15, 2017, the District Court granted summary judgment to DHS.  The court found that DHS's explanation for its decision to detail and reassign Cruz was not pretextual.

Cruz now appeals. Our review of the District Court's grant of summary judgment is de novo. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc). Summary judgment is warranted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We review the District Court's decision to deny discovery under Rule 56(d) for abuse of discretion. *Pollack v. Duff*, 793 F.3d 34, 48 (D.C. Cir. 2015); Fed. R. Civ. P. 56(d).

## II.

We first consider whether the District Court erred in granting summary judgment without permitting Cruz to take additional discovery. Because the District Court erroneously concluded that the evidence sought by Cruz could not create a dispute of material fact as to whether DHS's proffered reasons for taking adverse action were pretextual, we vacate the decision of the District Court.

Title VII makes it unlawful for a federal employer to take "personnel actions affecting employees" and motivated by "any discrimination based on race, color, religion, or national origin." 42 U.S.C. § 2000e–16(a). Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII plaintiff seeking to prove disparate treatment through indirect, circumstantial evidence "must first establish a prima facie case of prohibited discrimination." *Aka*, 156 F.3d at 1288. Once she has done so, the burden then shifts to the employer to "articulate legitimate, nondiscriminatory reasons for the challenged employment decision." *Id.* If the employer has properly offered legitimate, nondiscriminatory

reasons for its action, the burden shifts back to the plaintiff to prove that the reasons are a pretext for discrimination. *See Figueroa v. Pompeo*, 923 F.3d 1078, 1087-88 (D.C. Cir. 2019); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

Cruz alleges that DHS violated Title VII in removing her from her position as FEMA CISO and placing her on detail to DHS's Headquarters, and in "reassigning and demoting" her to the position of Deputy CISO, because they did so on the basis of her sex, race, national origin, and color. J.A. 15. According to Cruz, she was subjected to disparate treatment as compared to similarly situated white and non-African-American male employees.

DHS moved for summary judgment after Cruz filed the complaint, but before any discovery had taken place, stating that it had detailed and reassigned Cruz because of complaints regarding her "unprofessional and inappropriate conduct while serving as the CISO." J.A. 39. Cruz concedes that DHS presented a legitimate, nondiscriminatory reason, and argues instead that it is pretextual. In addition to opposing the motion on the merits, Cruz's counsel filed an affidavit pursuant to Rule 56(d) requesting that summary judgment proceedings be stayed pending discovery. Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court has discretion to, among other options, "allow time to obtain affidavits . . . or to take discovery." Cruz contends that the District Court abused its discretion when it denied her the opportunity to take discovery. Her affidavit, in relevant part, requested discovery on:

> The conduct of . . . Ms. Maria Roat toward the Plaintiff, as well as toward Black employees, female employees, and

employees who had engaged in protected activity, versus her conduct toward employees who did not share Plaintiff's protected characteristics . . .

The conduct of . . . Ms. Jeanne Etzel toward the Plaintiff, as well as toward Black employees, female employees, and employees who had engaged in protected activity, versus her conduct toward employees who did not share Plaintiff's protected characteristics.

J.A. 295.

In denying Cruz's Rule 56(d) request, the District Court stated it was "extremely unlikely" that evidence that other employees in DHS were treated more leniently could raise a material dispute over whether FEMA's justifications were pretextual. *Cruz v. Kelly*, 241 F. Supp. 3d 107, 112 (D.D.C. 2017). Not so. "[C]omparative information concerning an employer's treatment of [protected groups] is relevant evidence in an individual discrimination claim against that employer. Such evidence can be used . . . to show that the employer's stated reasons for the challenged actions are a pretext for discrimination." *Minority Employees at NASA (MEAN) v. Beggs*, 723 F.2d 958, 962 (D.C. Cir. 1983) (per curiam). Accordingly, evidence that white employees, or male employees, were disciplined less severely for the sort of behavior for which Cruz was disciplined could create a dispute of material fact about whether FEMA's justification was a pretext for discrimination.

The District Court also found that evidence of other similarly situated employees being treated more favorably would be irrelevant because of the "strong evidence" that the DHS's actions were independent of Cruz's protected characteristics. *Cruz*, 241 F. Supp. 3d at 112. Specifically, the

court was referencing the investigation that Gunsolus conducted at the request of Roat and Etzel. Even if the Gunsolus report were truly independent,[1] the evidence Cruz sought nonetheless would be material to the question of pretext. This Court has never held that the existence of an independent investigation is dispositive on the question of pretext. For example, in *Brady*, where an employer offered, among other evidence, that a misconduct incident had been "thoroughly and independently investigated," we noted that the plaintiff could attempt to discredit this nondiscriminatory reason with evidence that the employer treated other employees lacking protected characteristics more favorably in the same factual circumstances. *See* 520 F.3d at 495; *see also Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016) ("Showing that others outside the plaintiff's class have been more favorably treated is '[e]specially relevant' to a demonstration of pretext." (quoting *McDonnell Douglas*, 411 U.S. at 804)); *Morris v. McCarthy*, 825 F.3d 658, 672 (D.C. Cir. 2016) ("The 'mere conduct of an independent investigation' does not break the causal chain between a supervisor's bias and an adverse employment action." (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2001))).

We find that the evidence sought by Cruz could create a genuine dispute of material fact as to whether DHS's proffered reasons for taking adverse action were pretextual. The District Court's conclusion to the contrary rested on legal errors and

---

[1] Although we vacate the District Court's denial of Cruz's Rule 56(d) request, the record as read in her favor could support an inference that Gunsolus's investigation was merely a *post hoc* effort to shore up Roat and Etzel's decision to discipline Cruz. After meeting with Roat, Gunsolus agreed that she "would make a recommendation for the reassignment," thus providing Roat "documentation and recommendation as backup for the reassignment" in the event that Cruz took legal action, J.A. 104, as she has done here.

was thus an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."). Accordingly, with respect to Cruz's disparate treatment claim, we vacate the judgment of the District Court and remand the case for further proceedings. On remand, the District Court is free to consider, consistent with this opinion, whether Cruz's Rule 56(d) affidavit otherwise met all the standards set by *Convertino v. United States Department of Justice*, 684 F.3d 93 (D.C. Cir. 2012), including whether the affidavit offered a "reasonable basis" to suggest that discovery would produce the evidence required, *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999).

**III.**

We next consider whether the District Court erred in granting summary judgment in DHS's favor with respect to Cruz's retaliation claims. We find that summary judgment was inappropriate with respect to Cruz's claim that her reassignment to the Resource Management Branch was retaliatory. With respect to DHS's initial decision to extend her detail, we find that summary judgment was appropriate because Cruz did not create a genuine dispute of material fact.

Title VII's anti-retaliation provision prohibits employer actions that discriminate against an employee because the employee has "made a charge, testified, assisted, or participated in any manner" in a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a); *see also Figueroa*, 923 F.3d at 1083 (noting that Title VII's substantive protections apply to federal-sector cases). We analyze Title VII retaliation claims using the *McDonnell Douglas* framework discussed above. *See Geleta v. Gray*, 645 F.3d 408, 410 (D.C. Cir. 2011). To establish a prima facie case of

retaliation, a plaintiff must show "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate and nonretaliatory reason for taking the adverse employment action. *See id*; *see also Figueroa*, 923 F.3d at 1087-88. If the employer successfully meets this burden, "whether the plaintiff has made out a prima facie case is no longer relevant." *Geleta*, 645 F.3d at 411. At this point, "the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case," *Brady*, 520 F.3d at 494, but rather "should [] proceed[] to the ultimate issue of retaliation *vel non,*" *Jones*, 557 F.3d at 678. In determining whether a reasonable jury could infer retaliation, the court reviews "all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting *Jones*, 557 F.3d at 677).

DHS sufficiently presented a legitimate, nonretaliatory explanation for reassigning Cruz to the Resource Management Branch: there was a need for a GS-15 employee with managerial experience and she fit that role. Thus, the District Court should not have assessed Cruz's prima facie case but rather should have proceeded to determine whether Cruz's evidence creates a genuine factual dispute on the issue of retaliation. We review the evidence ourselves, *cf. Jones*, 557 F.3d at 679, and conclude that it does.

While the District Court concluded that all of the allegedly retaliatory acts were foreordained by the initial disciplinary decision, the record could reasonably support a conclusion that

the decision to reassign Cruz outside the information security field was distinct from that initial action. DHS had contemplated Cruz would take a ninety-day detail followed by her return as Deputy CISO, a position within the Information Technology Security Branch, and with reduced supervisory responsibilities. As DHS reasoned, reassigning Cruz to Deputy CISO would allow her to "focus more on [her] job and [] allow for less interactions with people." J.A. 192. This proposed action was reflected in the reorganization chart issued to relevant staff shortly after Cruz had received the written warning. Things changed, however, after Cruz engaged in protected activity – namely, filing a formal complaint of discrimination with FEMA's EEO office. After this point, DHS not only extended her detail for several additional months but also reassigned her to the Resource Management Branch, which does not involve information security. Moreover, this new position carried roughly the same supervisory duties as the position from which Cruz was originally detailed away. Although the District Court suggests that DHS was always looking for a position for Cruz that "would not require her to supervise the employees who had complained about her behavior," *Cruz*, 241 F. Supp. 3d at 113, the record lacks any such evidence. In fact, on June 19, 2012, when Roat met with Cruz to discuss the initial detail extension, she told Cruz that she should plan on returning to the Information Technology Security Branch as Deputy after her replacement had fully transitioned. In so doing, Cruz would not have been insulated from supervising the employees who complained about her. In short, the record evidence does not indisputably fit with the District Court's theory that, all along, DHS wanted to "find[] her an altogether different position." *Cruz*, 241 F. Supp. 3d at 113.

This evidence also undermines DHS's legitimate explanation for reassigning Cruz to a different division.

Indeed, one might struggle to reconcile DHS's explanation that it assigned Cruz to the Resource Management Branch because of her supervisory skills with its explanation that it removed her from the CISO position in order to lessen her interpersonal and managerial duties. Such inconsistency could be "probative of pretext," *Geleta*, 645 F.3d at 413 (quoting *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001)), and is usually adequate to permit a jury to assess the retaliation claim, *see George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005); *see also Jones*, 557 F.3d at 679.

Because DHS had properly articulated its legitimate, nonretaliatory reason for the reassignment, we reject the District Court's grant of summary judgment on the ground that Cruz's prima facie case was lacking, and we reverse because the evidence, taken together, was sufficient for a reasonable jury to make an inference of retaliation.

Cruz has not, however, created a genuine dispute of material fact with respect to the initial decision to extend her detail. DHS proffered evidence showing that it initially extended Cruz's detail for four to six weeks because more time was needed to onboard her replacement as permanent CISO. Cruz has neither offered evidence to call that legitimate, nonretaliatory explanation into question, nor has she requested the opportunity to take further discovery relevant to that aspect of the case. Accordingly, summary judgment on this aspect of her retaliation claim was warranted.

**IV.**

The District Court erred in granting summary judgment on Cruz's disparate treatment claim and her retaliation claim relating to her reassignment to the Resource Management Branch, but it properly granted summary judgment on her

retaliation claim relating to DHS's initial decision to extend her detail. Accordingly, the judgment of the District Court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*