# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-5100**

**September Term, 2024**

FILED ON: SEPTEMBER 24, 2024

LESTER A. LEACH,
  APPELLANT

v.

JANET L. YELLEN, SECRETARY OF THE TREASURY,
  APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-03075)

Before: WILKINS, WALKER and PAN, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record and on the briefs and oral arguments of the parties. The panel has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the order of the United States District Court for the District of Columbia be **AFFIRMED**.

Plaintiff-Appellant Lester A. Leach, an African-American employee of the United States Mint, brought this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), e-3(a), and e-16, over a series of events that occurred after a subordinate made a workplace complaint against him. Since there is insufficient evidence of discrimination or retaliation to send this case to a jury, we affirm the District Court's grant of summary judgment to Defendant-Appellee Janet L. Yellen, Secretary of the Treasury Department.

## I.

Because we are reviewing the District Court's grant of summary judgment to the Defendant, we "take the following facts from the evidence and read them in the light most favorable to" the Plaintiff, the non-moving party, "drawing all reasonable inferences in [his] favor." *Cruz v. McAleenan*, 931 F.3d 1186, 1189 (D.C. Cir. 2019).

**A.**

In 2006, Leach became the Director of the Security Division in the Protection Directorate of the U.S. Mint. He was selected by Bill Bailey, who is also an African-American and became Leach's first-line supervisor. Dennis O'Connor, a Caucasian, became Leach's second-line supervisor soon after. Joint Appendix ("J.A.") 500–01.

Throughout the years, Leach's subordinates made a number of complaints about his verbally abusive and unprofessional conduct. J.A. 369–71, 501–03. In 2013, Bailey drafted a memorandum on Leach's workplace misconduct to put Leach on notice and noted that he would take further action in the future if necessary. J.A. 374–75. Leach's misconduct continued after 2013. J.A. 370–71. An Equal Employment Opportunity ("EEO") investigation found that Leach "discriminated against" one of his subordinates in 2014, and that finding prompted Bailey to issue a formal oral counseling to Leach. J.A. 370. Even though Leach's subordinates were repeatedly bringing complaints against him, and notwithstanding the EEOC's finding of discriminatory behavior on his part, Leach continued to receive positive performance reviews during the same period of time. J.A. 502.

In August 2016, Leach filed a separate EEO complaint against other Mint officials, including Acting Deputy Director David Motl, a Caucasian, for race discrimination after they denied him funding to attend a training. J.A. 426–27, 503. The EEO investigator asked Motl to explain why he had approved comparable funding for a Caucasian female employee. J.A. 428. Leach's EEO complaint was not against Bailey and O'Connor; they supported funding his attendance of the training. J.A. 503.

The series of events giving rise to this suit began later that year. On December 21, 2016, Arnaldo Medina, a new Branch Chief who was hired by Leach more than a year before, shared with Bailey and O'Connor by email that he "ha[d] been subjected to [Leach's] constant condescending and verbally abusive behaviors[.]" J.A. 360. Medina requested that he be removed from Leach's chain of command and be given 60–90 days to find new employment. *Id.* As Bailey later testified, Medina had previously approached him in person about Leach's "condescending, verbally abusive behavior" several times. J.A. 470.

O'Connor agreed with Bailey's recommendation to open an administrative investigation into Medina's allegations. J.A. 503. On January 9, 2017, Bailey informed Leach that the Mint would investigate his conduct and remove him from supervisory responsibilities until the end of the administrative investigation. J.A. 503–04. Leach then contacted an EEO counselor and alleged both discrimination and retaliation stemming from the Mint's investigation and interim removal of his supervisory duties.[1] J.A. 504–05.

O'Connor informed Motl and Chief Counsel Jean Gentry of his plans to conduct an administrative investigation into Medina's allegations, but decided later that a more formal

---

[1] Leach asserted below that he first contacted the EEO on January 11, 2017, J.A. 504, but now claims that he did so on January 18, 2017, Appellant Br. 13.

2

investigation by the Treasury Department's Office of the Inspector General was warranted. J.A. 503–04. On January 17, 2017, O'Connor shared Medina's email containing his allegations with the Office of Inspector General ("OIG"), and OIG accepted the matter for investigation a week later. *Id*. OIG interviewed eight Mint employees and gave Leach the opportunity to submit any relevant documents. J.A. 505. On November 17, 2017, almost ten months after opening the investigation, OIG issued its final report. J.A. 506. Therein, OIG concluded that Medina's allegation was substantiated and that several other subordinates had corroborated Leach's inappropriate behavior.

On January 31, 2018, Bailey proposed to suspend Leach without pay for five days due to the following charges: (1) conduct unbecoming a federal government manager; (2) failure to timely pay his federal government-issued travel credit card; (3) failure to follow instructions; and (4) failure to respond to supervisor's request. J.A. 378–79. On April 11, 2018, O'Connor sustained the charges, but reduced the suspension to two days. J.A. 357. As a result of this suspension, Leach's teleworking privileges were revoked. *Id.*

Bailey detailed Leach to the Mint's Information Technology Directorate from February 2018 to March 2019. J.A. 507. Leach returned to the Protection Directorate after March 2019, but served in a nonsupervisory position. *Id.*

In May 2017, while the OIG investigation was still ongoing, the Protection Directorate created a new position, the Assistant Deputy Chief of Police. J.A. 508. Leach applied and was interviewed by an independent three-person panel, which gave the other two candidates higher scores and decided not to refer Leach to Bailey, who ultimately selected another individual for the position. J.A. 508–09. That individual is African-American, a twenty-year veteran, and an experienced official at the Mint. *Id.*

**B.**

On December 21, 2018, Leach brought this suit, alleging race discrimination and retaliation claims based on the following actions by his employer: (1) the initial administrative investigation into his conduct; (2) the temporary removal of his supervisory duties; (3) the referral of the matter to OIG; (4) OIG's decision to open an investigation into the matter; (5) his supervisors' conduct during the OIG investigation; (6) the proposed five-day suspension, which was made after the completion of the OIG investigation; (7) the two-day suspension, which also revoked his teleworking privileges; (8) the decision to reassign him to a nonsupervisory role in the Information Technology Directorate; (9) the creation of a new Assistant Deputy Chief of Police position in the division where he worked; and (10) his non-selection for that new position. J.A. 509–11.

Defendant subsequently filed a motion for summary judgment. J.A. 509. To survive summary judgment, a Title VII plaintiff must show that their claims are actionable and present sufficient evidence to prove that such actions are discriminatory or retaliatory. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196–98 (D.C. Cir. 2008) (discussing required elements for Title VII discrimination and retaliation claims). As relevant here, the plaintiff must demonstrate as part of that showing that the challenged actions qualify as adverse actions. *See id.*

The District Court assumed without deciding that all of the ten challenged actions here are actionable discrimination claims. It further found that all of those actions—except for the OIG referral and the proposed suspension—are actionable retaliation claims. The District Court concluded that Leach had not produced any evidence that would allow a reasonable jury to find those actions discriminatory or retaliatory and granted summary judgment on that basis. It thus did not need to decide whether all of the ten challenged actions are indeed actionable discrimination claims. Leach now appeals the District Court's grant of summary judgment.

## II.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court reviews the District Court's grant of summary judgment *de novo*. *Stoe v. Barr*, 960 F.3d 627, 638 (D.C. Cir. 2020). We must "consider[] the record taken as a whole, . . . view[] the evidence in the light most favorable to [Leach], and draw[] all reasonable inferences in [his] favor[.]" *Id.* (citations omitted). Credibility determinations and evidence-weighing considerations are not permitted. *Id.*

### A.

As we agree with the District Court that there is insufficient evidence of discrimination and retaliation for reasons discussed below, we affirm the grant of summary judgment on that basis without deciding whether the challenged actions are actionable discrimination and retaliation claims. We assume that they are for the purpose of this appeal.

### B.

When an employee has suffered adverse actions and the employer "has asserted a legitimate, non-discriminatory reason for [such] action[s], . . . . we ask [] whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on an impermissible ground." *Baloch*, 550 F.3d at 1197 n.2 (internal quotation marks and citations omitted).

The Mint provided non-discriminatory and non-retaliatory reasons for all of the challenged actions in this case. To create a genuine dispute for trial, Leach must present evidence that tends to rebut those reasons but he fails to do so. *Id.*

The Mint's initial administrative investigation into Leach's conduct was warranted by Medina's email regarding Leach's behavior, Medina's prior complaints of such behavior, and documented evidence of Leach's prior conduct issues. J.A. 516–18. The Mint also had a legitimate reason for the temporary removal of Leach's supervisory duties, as several of his subordinates complained about Leach's behavior over the years and Medina planned to leave his job due to it. J.A. 517–21. Leach's years-long pattern of behavior was "objectively troubling"

4

and Leach identifies no evidence to suggest that it was pretext for the decision to investigate and temporarily suspend him.  J.A. 517.

Further, Leach's supervisors had to refer Medina's email complaint to OIG, as Treasury Order 114-01 requires that complaints of possible "abuse of authority" be reported to OIG.  J.A. 339–40.  The complaints about Leach's conduct fall into that category.  Moreover, Bailey's proposed five-day suspension was based on the OIG report itself, which found that Leach subjected Medina to verbally abusive behavior.  J.A. 520.  O'Connor's decision to impose a two-day suspension was also based on that report.  The one-year reassignment allowed Leach to perform nonsupervisory tasks away from the work environment in which he had been accused of verbally abusive behavior.  J.A. 521–22.  Leach does not appeal his non-selection for the new position in the Security Division, so we need not evaluate the Mint's reasons for that decision.

Instead of demonstrating that the Mint actually had discriminatory reasons for its challenged actions, Leach focuses on his retaliation claims and alleges that he was retaliated against for bringing an EEO complaint against Motl and other Mint employees, who are not relevant to this suit, in August 2016.  J.A. 517–19.  In trying to prove retaliation, Leach contends that Gentry and Motl were "exceptionally antagonistic toward African Americans engaging in EEO activities" and points to two African-American employees, A.B. and Dickerson, who allegedly had similar experiences with Gentry and Motl.  According to Leach, after A.B. testified as part of an EEO investigation into Motl's retaliatory efforts against a different individual, Gentry placed A.B. under investigation as a punishment.  But Leach fails to present evidence of such investigation into A.B.  Leach also emphasizes how Dickerson previously filed an EEO complaint against Motl and also became the subject of a separate administrative investigation.  The administrative investigation, however, began before Dickerson engaged in any EEO activity and so the investigation could not have been a retaliatory decision against her for engaging in an EEO activity, as Leach alleges.  J.A. 497.

According to Leach, Gentry and Motl were the ones who decided to refer Medina's email to OIG and Bailey and O'Connor concealed that fact.  Leach says the fact that Gentry and Motl decided to make the referral is evidence of retaliation because Leach previously brought an EEO complaint against Motl and both Gentry and Motl allegedly retaliated against other African-Americans for similar reasons.  J.A. 519.  But as discussed above, Leach does not present evidence of any prior retaliation by Gentry and Motl.

Leach also raises questions regarding who knew about his prior EEO complaint at the time of the OIG referral and the role that Motl played in the referral decision.  Those questions, however, are not sufficient for the jury to find that the Mint's asserted nonretaliatory reason was not the actual reason for the OIG referral.  As Medina's allegations fall under the "abuse of authority" category, the OIG referral was required under Treasury Order 114-01.  Even assuming that no decision-making supervisor knew of this requirement, that would not render the referral decision pretextual, because the referral was still warranted by Leach's alleged conduct, and Leach failed to produce evidence that discrimination was the actual reason for his referral.

Leach also argues that Bailey and O'Connor knew that Medina's allegations were false and that both of them tainted the OIG investigation. Bailey and O'Connor did not "taint" the investigation by notifying the OIG about witnesses supportive of Medina's allegations. Further, Leach's positive performance reviews alone do not raise an issue of fact as to whether Bailey and O'Connor believed Medina's allegations, particularly where the OIG found that Medina's allegations were substantiated and corroborated by several current and former employees. *See Hampton v. Vilsack*, 685 F.3d 1096, 1101 n.8 (D.C. Cir. 2012).

## III.

For the foregoing reasons, there is insufficient evidence for a reasonable jury to find the challenged actions discriminatory or retaliatory under Title VII. We accordingly affirm the District Court's grant of summary judgment to Defendant-Appellee.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

## <u>Per Curiam</u>

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
       Daniel J. Reidy
       Deputy Clerk