# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 31, 2025          Decided July 25, 2025

No. 24-5127

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-01328)

———

*Blake E. Stafford* argued the cause for appellant. With him on the briefs were *Kristin McGough*, *Stephen P. Barry*, *James D. Friedland*, and *Hannah M. Mullen*.

*Thomas Pulham*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, at the time the brief was filed, and *Mark B. Stern*, Attorney.

Before: PILLARD and GARCIA, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: The Washington Lawyers' Committee frequently submits Freedom of Information Act requests for records from the Bureau of Prisons to inform its representation of individuals incarcerated in the federal prison system. Stymied by the Bureau's persistent failure to respond promptly to those requests, the Committee filed this suit claiming the Bureau's delays manifest a policy or practice of violating FOIA. It seeks an injunction requiring the Bureau to reform its FOIA processes to speed up the agency's production of records. The district court ruled that the Committee stated a viable policy or practice claim but, crediting an affidavit describing the Bureau's efforts to respond faster and more efficiently to the large volume of FOIA requests it receives, the district court granted summary judgment to the Bureau.

The Committee appeals that judgment. It objects that the Bureau requires it to submit an individual FOIA request each time it seeks access to its clients' disciplinary and educational records, rather than offering those records through an expedited process akin to the one the Bureau developed to facilitate release of prisoners' medical records requested under the Privacy Act. The Bureau's policy of channeling individual records requests into the agency's general FOIA pipeline, the Committee claims, unnecessarily increases the Bureau's backlog of FOIA requests and contributes to its failure to timely respond.

The Committee has identified no provision of FOIA that forbids the Bureau from regularly processing requests for individual prisoners' disciplinary or educational records under FOIA. The Bureau's adherence to its practice of reviewing those records requests for potential FOIA exemptions, rather than establishing a categorical release process as it did for

prisoners' Privacy Act requests for their own medical information, is not a policy or practice contrary to FOIA. The Committee does not allege that the Bureau's failure to further streamline access to prisoners' disciplinary and educational records violates the Privacy Act, or that the disparate treatment of medical records and other individual records is arbitrary or capricious. Because the policy or practice claim fails as a matter of law, we need not resolve the Committee's alternative argument that the district court applied the wrong legal standard in denying the Committee's request for discovery. The Committee's claims do not warrant discovery even under its preferred standard.

## I.

## A.

The Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires federal agencies to make their records "promptly available to any person" upon request. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quoting 5 U.S.C. § 552(a)(3)). After receiving a request for records, the agency must "determine within 20 [business days] after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request" of the agency's determination and the requester's rights. 5 U.S.C. § 552(a)(6)(A). The Act does not require the agency to "actually produce" the requested documents within twenty days, "[b]ut the agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Resp. & Ethics in Wash. v. FEC* (*CREW*), 711 F.3d 180, 182-83 (D.C. Cir. 2013). FOIA permits the agency to extend that period for ten additional days if the agency demonstrates "unusual circumstances," which

may include a need to search for records from other facilities or agencies or examine a voluminous number of separate records. 5 U.S.C. § 552(a)(6)(B).

Once the agency has determined it will withhold requested records, the requester must exhaust administrative remedies by appealing any adverse determination—such as the agency's decision to invoke a FOIA exemption and not release responsive records—to the head of the agency before seeking judicial review. *Id.* § 552(a)(6)(A)(i)(III); *CREW*, 711 F.3d at 184. But, if the agency fails to timely make the requisite determination, a requester "shall be deemed to have exhausted his administrative remedies" and can immediately sue in district court to compel the release of the disputed records. 5 U.S.C. § 552(a)(6)(C)(i).

Once a suit is filed, "the burden is on the agency to sustain its action," and if it fails to do so the court may order the agency to produce the requested records. *Id.* § 552(a)(4)(B). The agency may only be granted additional time to decide whether to produce documents or assert applicable exemptions if it shows "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *Id.* § 552(a)(6)(C)(i). FOIA is generally silent on what might constitute "exceptional circumstances," even as it warns that "a delay that results from a predictable agency workload of requests" can only be excused if "the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii). Once the agency has determined the records should be released, it must make them "promptly available" to the requester. *Id.* § 552(a)(6)(C)(i).

Release of requested records, "however fitful or delayed," typically moots ongoing litigation concerning an agency's failure to respond to a specific FOIA request. *Payne Enters. v.*

*United States*, 837 F.2d 486, 490-91 (D.C. Cir. 1988) (citation omitted). However, we have recognized that the production of documents in response to individual requests "will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* at 491. In a case in which a plaintiff raises such a claim, the court must consider whether the challenged policy or practice will "interfere with [the plaintiff's] right under FOIA to promptly obtain non-exempt records from the agency in the future," and, if necessary, provide appropriate injunctive relief. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018).

FOIA is not the only mechanism for private access to government records. The Privacy Act, 5 U.S.C. § 552a, requires federal agencies to provide an individual "access to his record or to any information pertaining to him" that is contained in an agency system of records, *id.* § 552a(d)(1). But Privacy Act carveouts allow agencies to deny access under that statute to any system of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws," including "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision." *Id.* § 552a(j)(2). The Bureau of Prisons's regulations accordingly exempt many agency records from the Privacy Act, 28 C.F.R. § 16.97, leaving requesters—including incarcerated individuals (or their lawyers) who wish to access their own records—to seek them through the same FOIA process available to all members of the public. *Id*. §§ 513.50, 513.60.

**B.**

The Washington Lawyers' Committee (WLC or Committee), a nonprofit legal services provider that often represents individuals incarcerated in the federal prison system, filed this suit against the Department of Justice in the district court in May 2023. The Committee alleged that the Federal Bureau of Prisons (Bureau), a component within the Department of Justice, required it to file FOIA requests to obtain basic information about its clients, even as the Bureau routinely failed to make any substantive response to such requests within the statutory deadline. The Committee further alleged that the Bureau "inflat[ed] the number of FOIA requests directed to it by funneling *all* information requests through FOIA, despite no statutory duty to do so," and then sought to use the resulting high "volume of FOIA activity" as a perennial excuse for its inability to provide timely responses. Compl. ¶ 19 (J.A. 10-11). The complaint included a list of over forty separate FOIA requests WLC had submitted to the Bureau since 2019, almost all of which had yet to yield release of the requested records. Compl. Ex. A (J.A. 19-21).

The complaint includes two counts: Count I challenges the Bureau's failure to timely respond to each of WLC's identified FOIA requests and Count II challenges the Bureau's alleged "policy and practice of violating FOIA's procedural requirements" by "failing to produce requested records or otherwise demonstrate that requested records are exempt from production within the time period required by FOIA." Compl. ¶ 40 (J.A. 15). The Committee requested, among other relief, that the court "[e]njoin [the Bureau] from failing or refusing to produce all non-exempt records responsive to WLC's current and future FOIA requests or otherwise demonstrate that

requested records are exempt from production within the time period required by FOIA." Compl. 11 (J.A. 16).

The Bureau moved to dismiss the policy or practice claim or, in the alternative, for partial summary judgment on that claim. The district court denied the motion to dismiss, holding both that the Committee was not required to administratively exhaust its policy or practice claim and that it stated a claim that the Bureau has an unlawful policy or practice of unjustified delays in responding to its FOIA requests. *Wash. Lawyers' Comm. for C.R. & Urb. Affs v. U.S. Dep't of Just.*, No. 23-1328, 2024 WL 1050498, at *7-9 & n.6 (D.D.C. Mar. 10, 2024).

In the same order, however, the court granted summary judgment to the Bureau on the policy or practice claim "based on the facts established in defendant's declarations." *Id.* at *10. As agencies routinely do in FOIA cases, the Bureau had submitted in support of summary judgment a declaration describing its process for responding to FOIA requests. *See Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020).

The declaration of Eugene Baime, the Bureau's Supervisory Attorney for its FOIA Section, explained that, in recent years, the Bureau processed an average of 5,846 requests per year by sorting requests into simple, complex, or expedited tracks and working diligently to respond to requests of increasing complexity. Baime Decl. ¶¶ 7, 9, 14, 22 (J.A. 62-64, 66, 69). The Baime Declaration disavowed any Bureau intent to violate FOIA. More usefully, it identified steps the Bureau has taken to improve its FOIA processing, including proactively posting some information on the Bureau website, adopting a "Centralization Light" plan to better oversee regional counsels' FOIA processing that improved weekly processing rates by 36.5%, and upgrading staff training and

oversight.  Baime Decl. ¶¶ 12, 21, 27-28 (J.A. 65, 68-69, 70-71).  The Bureau's FOIA Section also responds to information requests under the Privacy Act, and the Baime Declaration described that office's steps to streamline its workload by creating a separate, accelerated process during the COVID-19 pandemic to provide attorneys their incarcerated clients' medical records.  Baime Decl. ¶ 18 (J.A. 67).  The backlog of FOIA requests continues to grow, but the steps the Bureau identified are substantially reducing the rate of increase.

WLC's only rebuttal to the Baime Declaration was to point to its own long-pending FOIA requests, reiterate its claim that the Bureau "forces all requesters to submit FOIA requests for virtually any agency record," Pl.'s Mem. in Opp'n to Mot. to Dismiss 18 (J.A. 112), and emphasize the Bureau's acknowledgement that it "has allocated resources away from its FOIA office and staff" and "prioritizes requests in active litigation over other requests," all of which the district court deemed insufficient to create a material factual issue in support of the policy or practice claim. *Wash. Lawyers' Comm.*, 2024 WL 1050498, at \*11.  The court also denied the Committee's request for an opportunity to take discovery before the court ruled on the Bureau's summary judgment motion because WLC failed to "state with sufficient particularity why additional discovery is warranted on the record in this case." *Id.*

The district court observed that the Bureau had provided undisputed evidence of "multiple explanations" for the time it took to process FOIA requests. *Id.*  It recounted the Bureau's "recently implemented and so far successful programmatic efforts to address delays." *Id.*  That information, the court held, sufficed "to show that [the Bureau] does not have a policy or practice of 'repeated, unexplained, and prolonged delay in making information available' in response to FOIA requests

until requester litigation is initiated." *Id.* (quoting *Judicial Watch*, 895 F.3d at 779).

As for WLC's individual FOIA requests, jointly pressed in Count I, the district court acted "in the interest of efficiency and judicial economy" to sever all but one of those claims with leave to refile them separately. *Id.* at \*14. The court reasoned that those requests were each separately submitted, "almost all on different dates over a time span of three years, with each seeking different records related to different individuals or about the operations of various [Bureau] programs." *Id.* at \*13. The court provided that "the claims of timely refiled suits will relate back to the date on which the instant case was filed." *Id.* at \*14. That decision is not at issue here.

The Committee appealed the judgment only as to the policy or practice claim and related discovery request. We have jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment *de novo*, *Evans*, 951 F.3d at 584, and affirm if, viewing the record in the light most favorable to the nonmoving party, there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the denial of discovery for abuse of discretion. *Cruz v. McAleenan*, 931 F.3d 1186, 1191 (D.C. Cir. 2019).

**II.**

We first address WLC's argument that summary judgment was unwarranted. The Committee pleaded a valid claim that the Bureau maintained a policy or practice of violating FOIA, but more is needed to survive summary judgment. On appeal, the Committee refines its argument, unsuccessful in the district court, that the Bureau has made insufficient effort to speed up its FOIA processing. Before us the Committee underscores that the Bureau unnecessarily requires members of the public

to file FOIA requests to obtain information it could more efficiently provide through a process akin to the one it adopted under the Privacy Act for release of prisoner medical records to prisoners' counsel. Because that argument fails as a matter of law, we affirm the district court's judgment.

"[A] plaintiff states a plausible policy or practice claim . . . by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." *Judicial Watch*, 895 F.3d at 780. At the pleading stage, a plaintiff need not identify a precise "formal policy" of the agency responsible for those delays. *Id*. at 779. Once a plaintiff has stated a policy or practice claim, the task falls to the court to provide the agency with "the opportunity . . . to explain its delays and to confirm how it intends in the future to conform to FOIA's mandate" and "determine whether the agency's conduct . . . demonstrates a lack of due diligence and is so delinquent or recalcitrant as to warrant injunctive relief." *Id*. at 783-84.

This case has proceeded along the path mapped by *Judicial Watch*. WLC plausibly alleged unexplained and unresolved delays in responding to its FOIA requests, thereby shifting the burden to the Bureau to explain and justify its practices. The Bureau did so in the Baime Declaration, which described its process for responding to FOIA requests, the causes of its continued backlog, and the steps the Bureau has taken to improve processing speeds.

The parties disagree on the applicable standard for assessing whether the Baime Declaration suffices to support summary judgment. The Committee, citing *Judicial Watch*, argues that the Bureau must demonstrate that it is "mak[ing] records available as quickly as possible." 895 F.3d at 783. The

Bureau, relying on a different passage in *Judicial Watch*, responds that it need only show "good faith effort and due diligence" in responding to requests. *Id*. (quoting *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)). A third possibility, rooted in the language of the statute, is that to defeat the claim of a policy or practice of unlawful delay, the Bureau must "show exceptional circumstances exist and that the agency is exercising due diligence." 5 U.S.C. § 552(a)(6)(C)(i). That quoted provision addresses the normal conditions to excuse noncompliance with FOIA's statutory deadlines, at least in cases involving an individual request. Neither party argues that the "exceptional circumstances" standard should apply to policy or practice claims, so we do not address that possibility here.

Evidence that an agency generally attempts to respond to FOIA requests in good faith is not enough to entitle the government to summary judgment on a FOIA policy or practice claim. Nothing in FOIA suggests that a plaintiff in a FOIA policy or practice case must affirmatively demonstrate that the agency is acting in bad faith to survive summary judgment. Per *Judicial Watch*, a court resolving such a case must "determine whether the agency's conduct in failing to conform to FOIA's procedural requirements demonstrates a lack of due diligence and is so delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order, would be inadequate to overcome an agency policy or practice." 895 F.3d at 783 (citation omitted). An agency may be "delinquent or recalcitrant" in meeting its FOIA obligations without rising to the level of bad faith. To be sure, we have acknowledged that "not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief." *Id.* at 782. But it is equally true that an agency's invocation of factors like "staffing shortages and work overload" do not by

themselves necessarily "render injunctive relief inappropriate." *Id.* at 783. We need not spell out here the precise legal standard because the Committee's legal theory fails regardless.

The flaw WLC claims in the Bureau's FOIA processing is that the Bureau has an "admitted policy of needlessly"—in its view—"channeling [some] requests for individual records through its lengthy FOIA review process." WLC Br. 24; WLC Reply Br. 3, 11. Specifically, it points out that the Bureau responds to requests from prisoners (and their attorneys) seeking their medical records through a separate, expedited process under the Privacy Act that does not suffer the delays associated with the FOIA process. *See* Privacy Act of 1974; Systems of Records, 89 Fed. Reg. 49,906 (June 12, 2024) (Medical Records Notice); 28 C.F.R. § 16.97(a)(5). The Bureau voluntarily initiated that expedited process during the COVID-19 pandemic, when it began offering ready access to a prisoner's last two years of medical records if sought by an attorney in support of a motion for compassionate release or a request for home confinement. Baime Decl. ¶ 18 (J.A. 67). The Bureau has since expanded that system to apply to all attorney requests for their clients' medical records, regardless of the specific purpose or the records' timeframe. Medical Records Notice, 89 Fed. Reg. at 49,909.

That Privacy Act program is inadequate for the Committee's needs because it does not encompass other individual prisoner records—such as educational or disciplinary records. Prisoners' individual educational and disciplinary records remain exempt from disclosure under the Privacy Act, leaving prisoners and their counsel to seek them under FOIA. That is, no doubt, why the Committee makes no Privacy Act claim in this case. Rather, the Committee argues that the Bureau's policy of channeling requests for non-medical individual records through FOIA, rather than establishing a

speedier track as it did for medical records under the Privacy Act, violates FOIA. On appeal, the Committee identifies no other defect with the Bureau's FOIA processing—whether inadequate staffing, insufficient training, a lack of diligence in processing requests, or anything else. It objects only that the Bureau requires it to file FOIA requests in the first place, rather than offering a different, more expeditious system for obtaining the desired records.

The Bureau's adherence to FOIA processing of requests for prisoners' educational and disciplinary records cannot amount to a claim that the Bureau has a policy or practice of violating FOIA. Critically, the Bureau's efforts to offer attorneys expedited access to client medical records—which WLC says illustrate how the Bureau could further improve its FOIA operations—are in fact entirely separate from the Bureau's FOIA policies or practices. The Bureau did not simplify access to prisoner medical records by reforming its FOIA processes. Instead, those medical records are now available because, although all Bureau records are normally exempt from access under the Privacy Act as pertaining to criminal law enforcement, *see* 5 U.S.C. § 552a(j)(2); 28 C.F.R. § 16.97(a)(5), the Bureau elected to waive that exemption for certain medical records requested under the Privacy Act so that eligible requesters may obtain them without filing FOIA requests at all. Medical Records Notice, 89 Fed. Reg. at 49,909. The Committee thus in effect argues that FOIA requires the Bureau to go even further in waiving the agency's statutory entitlements under the Privacy Act. But it is the Privacy Act, and not FOIA, that determines the extent of the Bureau's obligations to allow access to its records via the Privacy Act's non-FOIA processes.

WLC's implicit conflation of the Bureau's activities under the two statutes is mistaken. The Privacy Act's disclosure

provisions are materially different from those under FOIA. Most notably, FOIA's purpose is to provide transparency to the public about the operations of government. The Privacy Act, by contrast, protects the privacy of personal information collected by the government. As relevant here, the Privacy Act provides for disclosures in response to requests "by any individual to gain access to *his record* or to any information *pertaining to him*." 5 U.S.C. § 552a(d)(1) (emphases added). A successful Privacy Act request does not make the requester's records available to the public at large.

FOIA, on the other hand, obliges agencies to make records available to "any person" who files a proper FOIA request, *id.* § 552(a)(3)(A), and under most circumstances "the identity of the requesting party has no bearing on the merits of his or her FOIA request," *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989). In other words, once one requester gets access to information under FOIA, it is treated as generally publicly available. FOIA also permits agencies to invoke exemptions when producing records that are tailored to the contents of particular documents, whereas the Privacy Act's statutory carveouts apply at the level of an agency "system of records" and provide for fewer but more sweeping exemptions. *Compare* 5 U.S.C. § 552(b), *with id.* § 552a(j)-(k).

The Committee has not challenged the Bureau's general regulation governing disclosure of agency records pursuant to applicable laws like FOIA and the Privacy Act, nor has it challenged the Bureau's regulations decreeing that ordinary records requests, including prisoner requests for individual records categorically exempt from Privacy Act disclosure, are processed though FOIA. *See* 28 C.F.R. §§ 513.32, 513.60, 513.50. The Committee has raised no claim under the Privacy Act that the Bureau's practices violate that statute, nor any

claim that its decision to permit expedited access to medical records but no other records was arbitrary and capricious. And, while the Committee seeks to use FOIA to force the Bureau to treat prisoner disciplinary and educational records similarly to its treatment of prisoner medical records under the Bureau's Privacy Act waiver, the Committee does not identify any provision of FOIA that it contends requires the Bureau to make an analogous waiver under FOIA, let alone to respond to the Committee's FOIA policy or practice claim by expanding the scope of its Privacy Act waiver.

In sum, nothing in FOIA forbids the Bureau from requiring records requests to be submitted and processed under FOIA, and the fact that the Bureau does so cannot be the basis for a claim that the Bureau has a policy or practice of violating FOIA. As the Committee has offered no other reason for us to conclude that the Bureau's practice is unlawful, we affirm the district court's grant of summary judgment.

That said, our holding should not be understood as an unconditional or uncritical endorsement of the Bureau's current FOIA-processing practices. FOIA is designed to "force increased expedition in the handling of FOIA requests" to achieve "greater transparency in support of open government." *Judicial Watch*, 895 F.3d at 781, 783 (formatting altered). To that end, Congress placed the burden on agencies to be proactive and enterprising to achieve efficiencies, including by "improv[ing] their records management systems to enable prompt responses without routine judicial involvement." *Id*. at 783; *see id.* at 784 (underscoring the courts' role in ensuring "that an agency has organized its records management systems to enable prompt determinations to produce records or to invoke an exemption, and to monitor when necessary an agency's progress in adjusting its records management systems to enable it to comply with FOIA"). FOIA requires each

agency to consider "adjustments to . . . practices, policies, personnel, and funding as may be necessary to improve its implementation" of the statute, including "the timely processing of requests for information." 5 U.S.C. § 552(j)(2)(C), (3)(D).

The information before us suggests persistent failures to make exemption determinations, and repeated and prolonged delays, some lasting years, in the production under FOIA of the commonly requested types of records WLC seeks here. The fact that the alleged delays prevent prisoners' (and their attorneys') access to their own records—a discrete type of frequently requested record of obvious importance to efforts to vindicate constitutional rights—may not be relevant to WLC's FOIA claim but is nonetheless troubling as a practical matter. As the district court observed, the Bureau has made appreciable improvements in its FOIA processing. And the Bureau's innovation in releasing medical records to prisoners and their counsel under the Privacy Act, thereby loosening the clogged FOIA pipeline, is to be commended. Given its persistent backlogs and long wait times, the Bureau would do well to keep looking for new ways to up its game.

## III.

The Committee also argues that the district court abused its discretion by applying the wrong legal standard in denying WLC's discovery request. Our normal practice in non-FOIA cases is to permit properly requested discovery before ruling on summary judgment. *See* Fed. R. Civ. P. 56(d); *see, e.g.*, *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012). And, when the Bureau moved for summary judgment, WLC made a Rule 56(d) request for discovery, arguing that it could not otherwise "present facts essential to justify its opposition." *See* Hart Decl. ¶¶ 19-21 (J.A. 135-36); Fed. R.

Civ. P. 56(d). The district court denied discovery under our circuit's "FOIA-specific standard," under which "discovery in individual FOIA cases is rare" and was not shown to be warranted here. *Wash. Lawyers' Comm.*, 2024 WL 1050498, at \*12 (internal quotation marks omitted).

The Committee does not challenge the distinct practice of limiting discovery in FOIA litigation but argues that it should apply only to cases concerning specific record requests, and not policy or practice claims. We have yet to address whether the standard for discovery differs in a FOIA policy or practice case. *Judicial Watch* held only that the district court on remand would "determine, in the first instance, the appropriateness of discovery," 895 F.3d at 784, and could "focus and streamline inquiry into whether the agency's production times are justified," including through "reliance on agency affidavits at the summary judgment stage," *id*. at 790 (Pillard, J., concurring) (citing *McGehee v. CIA*, 697 F.2d 1095, 1112-13 (D.C. Cir. 1983)).

The contours of WLC's claim matter here. The Committee argues that the Bureau violates FOIA by adhering to a policy or practice of delay that it effectively attributes to the Bureau's failure to make a categorical, *ex ante* waiver of FOIA exemptions for prisoners' disciplinary or educational records. The Committee supports that claim by analogy to the Bureau's treatment of medical records in its Privacy Act disclosure system. In essence, even though the Bureau has no obligation to disclose prisoners' records to them under the Privacy Act, it has chosen to do so for medical records, and WLC says that shows the Bureau could and should treat disciplinary and educational records requested *under FOIA* the same way. But, as noted above, FOIA disclosures are to the public at large.

Because the Committee's claim fails as a matter of law, it does not support discovery under any standard. We therefore need not decide whether the FOIA-specific discovery standard applies to policy or practice claims in the same way it does to other FOIA cases. We also need not address whether the Committee waived its argument for a distinct standard by apparently endorsing the typical FOIA discovery standard in the district court, *see* Pl.'s Mem. in Opp'n to Mot. to Dismiss 21-22 (J.A. 115-16), nor whether the Bureau forfeited the forfeiture argument by failing to raise it before our court.

WLC has sought discovery into the Bureau's internal communications and records related to how it prioritizes and processes FOIA requests, trains staff, allocates resources, and otherwise complies with the statute. Hart Decl. ¶ 19 (J.A. 135-36); *see* Oral Argument at 8:10. While such information might be relevant to other claims that the Committee might bring in a different lawsuit, none of it could validate WLC's erroneous theory that FOIA requires that the Bureau justify the limits of its waivers under the Privacy Act.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*